THE PEOPLE, *ex rel.* The Lockport City Bank, *vs.* THE BOARD
OF EDUCATION OF THE VILLAGE OF LOCKPORT.

The fact that a bank owns stocks, bonds, and other securities of the United
States, in amount exceeding its capital and surplus earnings, and that the
total value of all its other personal property does not exceed the amount of
the debts it owes, will not exempt it from taxation on account of. personal
property, on the ground that the capital of the bank is its surplus after. pay-
ing all its debts, and that in the given case it will require all its personal
property, other than its investments in United States securities, to pay its
debts, and therefore all its capital is in United States securities, which are not
taxable.

The relator was a bank, organized under the general banking law of 1838, with a
capital of $104,000. The cost of its real estate was about $14,000. Its sur-
plus profits were about $34,000, or $35,000; and it had about $203,500 of United
States stocks, or bonds, and had about $65,000 of other stocks, deposited as
security, with the bank department of the state, and about $120,000 of United
States stocks. It held and owned stocks and bonds and other securities of
the United States, to an amount exceeding its entire capital, including all its
surplus profits, earnings and reserved funds; and the total value of all its
other personal property and estate did not exceed the amount of debts due
from the bank. The bank was assessed, on account of its personal property
or estate, the sum of $102,400, being as alleged, the whole amount of its
capital stock paid in, and of all its surplus profits or reserved funds, less ten
per cent thereof, after deducting therefrom the value of its real estate. *Held*
that the relator not having shown that any of its capital stock was invested
in United States securities, or that it was assessed for any part of its prop-
erty invested in such securities, was not entitled to a writ of *mandamus*, com-
manding the assessors to amend the assessment, and the assessment roll, by
striking therefrom the assessment of the bank for or on account of personal
property.

The provision of the statute requiring assessors to set down, in the assessment
roll, the full value of all the taxable personal property of the person, *after
deducting the just debts owing by him*, (1 *R. S.* 391,) has no relation· to the taxa-
tion of moneyed corporations.

The effect of the decision of the Supreme Court of the United States, in the
cases of *The People*, ex rel. *The Bank of the Commonwealth* v. *The Commissioners
of Assessments &c. in New York*, and *The Same*, ex rel. *The Bank of Commerce*,
v. *The Same*, (2 *Wal.* 200,) was neither more nor less than that the state can
not, by any system of taxation, assess and tax the securities of the United
States, whether held or owned by corporations or individuals; nor can such
holder and owner be taxed on account of such securities, or their value.

That decision does not declare the act of the legislature "in relation to the
taxation of moneyed corporations and associations," passed April 29, 1863,

The People *v.* Board of Education of the Village of Lockport.

(*Laws of* 1863, *p.* 435,) to be unconstitutional. The effect of the decision, however, may be to annul the act, and render it inoperative in cases where the capital of the bank is wholly, or in part, invested in the securities of the United States. In such cases the statute might, perhaps, be impracticable. Or possibly our courts would hold the statute operative to the extent of the capital stock not invested in United States securities. *Per* MARVIN, J.

AN alternative mandamus was issued, in this case, at the special term held in Niagara county in May, 1865. The defendant answered; and at the Erie special term held in June, 1865, a peremptory mandamus was awarded, commanding the defendant to amend the assessment and the assessment roll mentioned in the alternative writ, by striking therefrom the assessment of the relator for or on account of personal property, and that the relator have judgment therefor, and for costs of the proceedings. The defendant thereupon appealed to the general term.

The facts, as shown by the writ and answer, in brief, are these : The relator is a bank, organized under the general banking law of 1838, with a capital of $104,000. The defendant caused the relator to be assessed on account of its personal property or estate, the sum of $102,400, being, it is alleged in the writ, the whole amount of its capital stock paid in or secured to be paid in, and of all its surplus profits or reserved funds, less ten per cent thereof, after deducting therefrom the value of the real estate then owned by the relator. The tax roll was completed in accordance with this assessment. The relator, by its president, appeared before the defendant and made application for the correction of the tax roll, and claimed an entire exemption from any tax on account of personal property. The president was examined on oath before the defendant, and he also made an affidavit touching the condition of the relator. From the examination and affidavit it appeared that the capital stock of the bank had been for several years, and then was, $104,000 ; that the cost of the real estate held during that time, and then held, by the bank, was about $14,000 ; that the surplus profits

were about $34,000, or $35,000 ; that the bank had about $203,500 of United States stocks or bonds, and that since January, 1846, it had at no time held less than $120,000 of United States stocks ; that the bank then had about $65,000 of stocks, other than United States, deposited as security with the bank department of the state, and about $120,000 of United States stocks. That the bank held and owned stocks and bonds and other securities of the United States (being the indebtedness of the United States) to an amount exceeding its entire capital, including all its surplus profits, earnings and reserved funds ; and that the total value of all the other personal property and estate of the said bank did not, on the 1st of January, 1864, and had not at any time since, exceeded the amount of debts due from said bank.

The defendant refused to make any correction in the assessment or tax roll, and was proceeding to collect the tax apportioned to the relator, when the alternative writ was awarded.

*L. F. Bowen*, for the plaintiff,

*J. L. Buck*, for the defendant,

*By the Court*, MARVIN, J.   It is argued by the counsel for the relator that, as it was shown that the bank owned stocks, bonds and other securities of the United States, in amount exceeding its capital and surplus earnings ; and that the total value of all its other personal property did not exceed the amount of the debts it owed, it could not be taxed for any amount of personal property.   I can not assent to this position.   There is no authority for it.   It is argued that the capital of the bank is its surplus after paying all its debts, and that in this case it will require all its personal property other than its investments in United States securities, to pay its debts ; and therefore all its capital is in United States securities, which are not taxable.

Why not appropriate a portion of its United States securities to the payment of its debts, instead of withdrawing from the bank department the $65,000 pledged and held as security for the redemption of its issues?

Let us, at this place in our examination, ascertain the state of the law as shown by our statutes and the decisions of the Supreme Court of the United States. By the Revised Statutes it is declared that "all lands and personal estate within this state, whether owned by individuals or by corporations, shall be liable to taxation, subject to the exemptions hereinafter specified." (1 *R. S.* 387, § 1.) "Personal estate" includes stocks in moneyed corporations. (§ 3.) All property exempted by the constitution of the state or of the United States is exempted from taxation; also the personal estate of every incorporated company not made liable to taxation on its capital, in the fourth title of the chapter. (§ 4.) The statute declares the duties of assessors, and the form of the assessment roll. It is to contain, in one column, the full value of all the taxable personal property owned by the person whose name appears in another column, after deducting the just debts owing by him. (*Id. pp.* 390, 391.) This provision, as to the full value of personal property, was not intended to apply to corporations. The system as to them was somewhat different, and is found in title 4 of the act, beginning at page 414. It is declared by section one that all moneyed or stock corporations deriving an income or profit from their capital, or otherwise, shall be liable to taxation on their capital, in the manner therein after prescribed. By the manner prescribed, the assessment roll is to specify the amount of the capital stock of the incorporated company, paid in and secured to be paid in; excepting therefrom the sums paid for real estate. The result of the system was, as to personal property, a tax regulated by the amount of the capital stock paid in and secured to be paid in, deducting therefrom the sums paid for real estate. The real estate was assessed at the sums actually paid therefor. (§§ 2, 6, &c.)

Manufacturing and turnpike companies were to be assessed the value of their stock. This system underwent some changes. By the act of 1853, ch. 654, all surplus profits or reserved funds, excluding ten per cent of the capital, was to be included in the assessment roll, and be taxed.

By the act of 1857, the assessors were to *value* the capital stock, and the tax was imposed according to its actual value. In this state of the statute law, the cases of *The People* ex rel. *The Bank of the Commonwealth* v. *The Commissioners of Assessments, &c. in New York*, and *The Same* ex rel. *The Bank of Commerce* v. *The Same*, were decided by the Supreme Court of the United States. The opinion of the court was by Nelson, J. in the latter case. Let us see what was decided. The learned justice stated the question to be, whether the stock of the United States, constituting a part or the whole of the capital stock of a bank organized under the banking laws of New York, is subject to state taxation. The court held that it was not. The case shows that all the capital of the bank, except that invested in real estate, was invested in "stocks, bonds and securities of the United States ;" and this was *assumed* throughout the case. Justice Nelson states that the capital of the bank is taxed under existing laws upon *valuation*, like the property of individual citizens, and not as formerly, on the amount of the nominal capital, without regard to loss or depreciation. He adds : "According to that (former) system of taxation it was immaterial as to the character or description of property which constituted the capital, as the tax imposed was wholly irrespective of it. The tax was like one annexed to the *franchise* as a royalty for the grant. But since the change of this system it is agreed the tax is upon the property constituting the capital."

Soon after this decision, the legislature passed a law designed to restore the "former system." These moneyed corporations and associations were declared to be liable to taxation on a *value* equal to the amount of their capital

stock paid in, or secured to be paid in, and their surplus earnings (less ten per cent of such surplus.)   (*Laws of* 1863, *ch.* 240.)   In this condition of the law, several cases were brought before the courts.   Among them *The People* ex rel. *The Bank of Commerce, of New York* v. *The Commissioners of Taxes, &c.*   It is reported in 40 *Barb.* 334.   A very able and interesting opinion was delivered by Justice Sutherland, containing a very full history of the system of taxation of moneyed corporations, in this state.   The proceedings of the tax commissioners were sustained, and the case, and other like cases, after passing through the Court of Appeals, were taken to the Supreme Court of the United States, by which court the judgments were reversed.

Let us now ascertain what has been decided, and what the law is, as applied to the case under consideration.   The cases are reported, 2 *Wal. R.* 200, under the title "Bank Tax Case." The reporter states that some of the banks had invested their whole capital in the securities of the federal government, and others had largely done so, and the question was whether the act of 1863 did not also impose a tax upon the stocks.   The counsel for the tax commissioners put the case mainly upon the ground that the tax was imposed by the state as a compensation for the *franchise* granted to the banks. They claimed that the tax was imposed upon the corporations directly and specifically, and that it was not imposed upon their property; and they claimed this construction of the act of 1863.   The counsel for the relators argued that the tax was upon the *property* of the bank, and that it was immaterial whether the value of the property was fixed arbitrarily, or by the valuation of assessors.

Justice Nelson delivered the opinion of the court, in the case of *The Bank of the Commonwealth.*   He stated the question to be, whether or not the stock of the United States, in which the capital of the bank is invested, is liable to taxation by the state of New York, under the act of 1863; or more directly, whether or not that act imposes a tax upon

these stocks thus invested in the capital stock of the banks. He held that the tax was a tax upon the property in which the capital was invested, and not a tax on the *privileges* or *franchises* of the banks ; and as the property consisted of the stocks of the United States, the case could not be distinguished from that of *The Bank of Commerce* v. *New York City,* (2 *Black,* 260,) previously decided by the court.

What is the effect of these decisions ? Nothing more, and nothing less, than that the state can not, by any system of taxation, assess and tax the securities of the United States, whether held or owned by corporations or individuals ; nor can such holder and owner be taxed on account of such securities or their value. It was shown or *assumed,* in all the cases decided by the United States court, that the tax did reach the United States securities. How is it with the case under consideration ? The relator certainly has a large amount of personal property which is not invested in United States securities. Is this property to escape taxation ? I think not. We have seen that our system of taxation commences with the declaration subjecting all the property, real and personal, in the state, to taxation, subject to the exemptions therein specified ; among which is all property, real or personal, exempted from taxation by the constitution of the state or United States. Judge Denio says, in *The People* v. *The Commissioners of Taxes, &c.,* (23 *N. Y. Rep.* 195,) " Whether such exempt property is found in the hands of an individual, or in the possession of a corporation taxed upon the actual value of its capital, the rule is the same ; the exempt property is to be deducted from the aggregate valuation, and the tax is to be imposed upon the residue." This is undoubtedly a correct position.

What was done by the assessors in the case under consideration ? They assessed the relator " for or on account of its personal property or estate, at the sum of $102,400." This was the sum assessed. It is averred that this was the whole amount of its capital stock paid in or secured to be

The People *v.* Board of Education of the Village of Lockport.

paid in, and of all its surplus profits or reserved funds, less ten per cent thereof, after deducting therefrom the value of all the real estate then owned by the bank. Now where is the evidence to show that this assessment was not entirely proper for its whole amount, or for a large portion of such amount? The assessment takes no notice of any United States securities. It is claimed, I suppose, that the assessment was made under and according to the act of 1863. Let it be conceded that the defendant assumed to proceed under that act, and what will follow? This act is not declared by the Supreme Court of the United States to be unconstitutional. The effect of the decision, however, may be to annul the act and render it inoperative in cases where the capital of the bank is wholly, or in part, invested in the securities of the United States. In such cases the statute might perhaps be impracticable. Or it may be that our courts would hold the statute operative to the extent of the capital stock not invested in United States securities. The United States courts will never interfere with our system of taxation, or our construction of our statutes, unless we impose taxation upon the United States securities. The difference between the act of 1863 and the act of 1858 is, that by the former the capital stock is to be assessed at its *actual* value, and by the latter the valuation is to be equal to the amount of the stock. In the one case the actual value is to be ascertained; in the other case it is to be assumed. If the act of 1863 is annulled, then the act of 1857 is in force. The latter act was only repealed by implication, by the act of 1863, and if the latter act was void it had no effect upon the former act. If we resort to the act of 1857, what is there in the present case to show that the capital stock of the bank is not worth par, irrespective of any investments by the bank in United States securities? Or if we take the act of 1863, what is there to show that any portion of the capital stock is invested in United States securities? *Prima facie* the assessment was legal. Let us again look at the case as

made by the bank. Its capital stock was $104,000, its surplus profits $35,000; its real estate cost $14,000. It owned $65,000 of stocks, other than United States, and they were deposited in the bank department, as security. It "held and owned" United States securities in amount more than its capital and surplus profits; and all its other personal property did not exceed the amount of the debts it owed. It is further stated that the bank held and owned $203,500, in amount, of the securities of the United States.

It does not appear that one dollar of its capital stock, or capital, is invested in United States securities. It does not show the amount of its deposits, or of its discounts; and for aught that appears, its deposits may have been used in purchasing the United States securities. And I infer that such was the fact. It "held and owned" United States securities larger in amount than its capital and surplus. At one time — January 1, 1865 — it held and owned $121,000, and March 31, 1865, it held and owned $203,500. I see no reason why it should not have "held and owned" a million of dollars without using one dollar of its capital stock or capital. It was, of course, a debtor for its deposits or borrowed money, and it could therefore state that all its other personal property did not exceed the amount of debts it owed. It seems to have been supposed by the relator that if it made a case showing that it "held and owned" United States securities equal in amount to its capital and surplus profits, and also that it owed an amount equal to the total value of all its other personal property, it could not be taxed. I suppose the relator, in this view, had reference to the statute requiring the assessors to set down in the assessment roll the full value of all the taxable personal property of the person, after *deducting the just debts owing by him.* (1 R. S. 391.) This provision has no relation to the taxation of moneyed corporations. By the theory of the relator, a bank may have $1,000,000 capital stock, with a million of dollars of state stocks deposited in the bank department as security for its

The People *v.* Board of Education of the Village of Lockport.

circulation, and yet escape taxation. If it has a million dollars of deposits, or borrows that amount, and then purchases a million of United States securities, the case for exemption from taxes is made out. This position can not be sanctioned. The bank is liable to taxation for its capital stock, or its value, not invested in United States securities. In this case it appears that the relator had $120,000 United States stocks deposited with the bank department of the state, in addition to the $65,000, other stocks deposited as security. How these $120,000 of United States stocks were obtained, does not appear. It may be that a portion of the original capital of the bank was invested in these United States stocks, but this does not appear. They amount to more than the whole capital stock of the bank, and yet it has $65,000 of other stocks deposited as security. The counsel for the defendant claimed that, in any view of the case, the bank was taxable on account of the $65,000, and of this I have no doubt; also on its surplus, $35,000, less ten per cent thereof; and I am inclined to think this is so, although there might be a difficulty as to this, in case it appeared that a portion of the capital stock was invested in, and represented by United States securities. The counsel also claimed that the case of the relator was defective in not showing the *value* of the real estate owned by it, and that therefore nothing should be deducted on account of real estate. In this way he produced an assessment of some $96,000. The criticism as to the real estate is, I think, too refined. The statute of 1863 uses the word *value* of the real estate. All the previous statutes speak of the cost, and what was paid for the real estate. The relator speaks of the *cost* of the real estate. It may not now be of the *value* of its cost, but there is no presumption that it is not; and I think it fair to presume that it is worth, now, all it cost. There was evidently no intention to evade the question of *value*. I prefer to put our decision upon the broad ground that the relator has not made a case entitling it to the writ

of mandamus. It has not shown that any of its capital stock is invested in United States securities, or that it is assessed for any of its property invested in such securities. It has proceeded, in its claim for exemption, upon an entirely erroneous theory. It has not established a clear right to the writ, and the judgment of the special term should be reversed, and the writ quashed, with costs.

[ERIE GENERAL TERM, September 3, 1866. *Grover, Daniels, Marvin* and *Davis,* Justices.]