NEW YORK PRACTICE REPORTS. 459

The Peopld agt. The Commrs. of Taxes and Assessments.

## SUPREME COURT.

THE PEOPLE of the state of New York, *ex rel.*, BENJAMIN T. BABBITT *agt.* THE BOARD OF COMMISSIONERS OF TAXES AND ASSESSMENTS for the city and county of New York.

In determining the amount of personal property of an individual, by assessors or commissioners of taxes, for the purpose of taxation, *stocks and bonds of the United States* are to form no part of the estimate. They cannot be excluded or deducted from the amount of his assets, liable to taxation, for it is error to in clude them in such assets.

At a special term of the supreme court of the state of New York, held at the city hall, in the city of New York, on the 29th day of June, 1870.

Present, Hon. ALBERT CARDOZO, J.

(*Title of cause*). ORDER.—On reading and filing the petition of Benjamin T. Babbitt, the relator above named, and on motion of A. R. Lawrence, Jr., of counsel for the said relator.

It is ordered that a writ of *certiorari* issue out of this court, directed to the commissioners of taxes and assessments for the city and county of New York, commanding them that they do certify and return their proceedings in the matter of the assessment or valuation of the personal property or estate of the said relator, liable to taxation, in the city and county of New York, for the year 1870, with the assessment roll on which the name of said relator and such assessments are entered, and under what law, or by virtue of what power the assessment is made, and all things, papers and documents appertaining thereto, unto our supreme court, before one of the justices thereof, at a special term at

chambers, to be held at the court house, in the city of New York, on the first Monday of July, 1870, at 12 o'clock M.

A copy. CHARLES E. LOEW.

*Certiorari.*—The people of the state of New York.

To the board of commissioners of taxes and assessments for the city and county of New York.

We, being willing, for certain causes to be certified, of the proceedings, decision and action had by and before you, in the matter of the assessment for taxation of the personal property or estate of Benjamin T. Babbitt, of the city of New York, by you lately made, do command you that all and singular the said assessment made by you for the year 1870, and all and singular the documents, papers and rolls relating thereto, and your decision and action therein, with all things touching or concerning the said assessment, as fully and entirely as the same remain with you, you send to our supreme court of judicature, at a special term thereof, to be held at the court house, in the city of New York, on the first Monday of July next, together with this writ, to the end that your decision and action in the matter of the said assessment, may be reviewed and corrected on the merits by our said court, and that we may further cause to be done thereupon what of right should be fit to be done.

Witness, Hon. ALBERT CARDOZO, one of the justices of our court, at the court house, in the city of New York, the 29th day of June, eighteen hundred and seventy.

By the court.

CHAS. E. LOEW,
*Clerk.*

*Return.*—To the supreme court of the state of New York.

We, the undersigned commissioners of taxes and assessments for the city and county of New York, by virtue of and in obedience to a certain writ of *certiorari* to us directed and hereto annexed, do certify and return,

That we did, as by law required, on or about the 10th day

of January, 1870, assess the personal estate of Benjamin T. Babbitt, mentioned in the said writ of *certiorari*, at the sum of two hundred and fifty thousand dollars, and that such assessed valuation was duly entered in the books provided for that purpose, and kept in the office of the said commissioners, called The Annual Record of the Assessed Valuation of Real and Personal Estate.

That notice of such assessment was duly given to said Benjamin T. Babbitt.

That thereupon said Babbitt, on or about the 29th day of April, 1870, did address to us, the said commissioners, a written statement or communication, verified by his oath, a true copy whereof is hereunto annexed as a part of this return, marked schedule " A," and that said Babbitt, on the 29th day of April, 1870, did attend before us, the said commissioners, at our office, in the city of New York, and offered to be examined by us under oath, pursuant to the statute in such case made and provided, touching his personal estate assets and property, and as to his debts and liabilities.

That we, the said commissioners, did thereupon waive such examination, and accepted and retained the said statement of said Babbitt (schedule " A ") as a true statement of his personal estate, assets and property, and of his debts and liabilities.

That the said Babbitt did then and there request and demand of us, the said commissioners, that we should strike out the said assessment of two hundred and fifty thousand dollars from the said books of annual record of assessed valuation, and upon the assessment roll of the year 1870 ; and also did request and demand of us, the said commissioners, that we should not assess any amount whatever against him, the said Babbitt, for the reasons set forth in the statement hereinbefore mentioned as schedule " A," hereto annexed.

That thereupon we, the said commissioners, did examine into the said statement made by the said Babbitt, and did

consider his said request and demand, and we determined and decided to reduce the said assessment of the personal estate of said Rabbitt to the sum of two hundred thousand dollars, and that said assessment was thereupon made and fixed at said last mentioned sum, and duly entered on the assessment rolls of the year 1870, and that such assessment stands in the said annual record of the assessed valuation of real and personal estate as an assessment for that amount against the said Babbitt upon his personal estate.

That said decision thereon was declared and such reduction made within thirty days after the said application was made to us, as aforesaid, and prior to the 30th day of May, 1870, and that written notice of said decision was duly given by us to the said Babbitt, on or about the 26th day of May, 1870.

That a copy of said notice is hereto annexed as a part of this return, marked schedule "B."

That the said assessment was not made upon the public stock or bonds of the United States, but upon personal estate of the said Babbitt not exempted from said assessment by any law of the United States, or of the state of New York; and that our action in making the same was under and in pursuance of the several laws of the state of New York relating to the assessment and collection of taxes in the city and county of New York.

That said assessment was made in accordance with instructions given to us by the comptroller of the state of New York in pursuance of the statute in such case made and provided, which instructions, we, the said commissioners, are bound to follow.

That a copy of such instructions is hereto annexed as a part of this return, marked schedule "C."

All of which we, the said commissioners, do hereby certify and return, as by said writ of *certiorari,* we are commanded.

In testimony whereof, we have respectively to these pres

ents subscribed our names and affixed our seals, at the city of New York, on the 28th day of July.

GEORGE H. ANDREWS, [L. s.]
THOMAS J. CREAMER, [L. s.]
W. H. KING, [L. s.]
NATHANIEL SANDS. [L. s.]

SCHEDULE " A."—*To the commissioners of taxes and assessments for the city and county of New York:*

GENTLEMEN, I am in receipt of your notice to me that my personal estate for 1870 is assessed at two hundred and fifty thousand dollars, exclusive of bank stock, and stating that the same, if erroneous, must be corrected on or about the 30th day of April next, or it will be confirmed at that amount, from which there will be no redress.

I hereby notify you that the said assessment is erroneous, and that I am not liable to be taxed upon any personal property.

I own bonds of the United States of America, of the par value of two hundred and fifty thousand dollars, being the bonds commonly known as the five-twenties, all of which were purchased by me during the years of 1865, 1866 and 1867, for permanent investment, and have ever since been owned and held by me as such, and that none of such bonds have been purchased since January 1st, 1868; my debts and liabilities exceed my assets in the business in which I am engaged, and any other personal property owned by me.

The following is a correct statement of my assets and liabilities on the first day of January, 1870, in the business in which I am engaged.

ASSETS.—Merchandise, machinery and fixtures in factory, $115,503 45 ; horses, trucks and furniture, $5,000 ; book accounts, $129,145 13 ; bills receivable, $15,409 09 ; cash, $62,838 25 ; household furniture at residence, $12,000 ; horses and carriages, private, $6,000 ; total, $345,895 92.

LIABILITIES.—Loans, borrowed money and accrued inter-

est, $351,418 59; book accounts, $4,665; total, $356,084 94.

And since that date my debts and liabilities have increased, and the excess of such debts and liabilities over the amount of my assets and personal property is now greater than it was on the first day of January, 1870.

I have no personal property other than the United States bonds before mentioned, and the property mentioned and referred to in the foregoing statement.

I therefore respectfully require that you should strike my name from the assessment rolls for the year 1870, as liable to be assessed in the sum of two hundred and fifty thousand dollars, or in any sum whatever for personal estate.

It is proper that I should state again, as I have before stated in person, that I am ready and willing to be examined under oath by you, or any of you in relation to my personal estate, and as to my liabilities to be taxed thereon.

I also verify this statement for the purpose of showing you that I make the application to have my name stricken from the assessment rolls in good faith. Yours respectfully,

B. T. BABBITT.

Dated New York, April 15th, 1870.

*City and county of New York, ss:* Benjamin T. Babbitt, being duly sworn, says that he has read the foregoing statement by him subscribed, and knows the contents thereof, and that the same is true of his own knowledge.

B. T. BABBITT.

Sworn to before me April 29th, 1870.

J. M. SCRIBNER, Jr., *Notary Public, New York City.*

SCHEDULE " B."—Department of the Commissioners of Taxes and Assessments, City Hall Park, Chambers street. New York, May 20th, 1870.    Sir: Your affidavit of the 29th ult. represents that your property is of the value of: taxable, $345,895 93; that your debts are $350,089 49; that your United States bonds at par are $250,000; difference, $106,084 49; leaving liable to taxation, $239,811 42.

The commissioners have fixed upon $200,000 as an equitable amount for your assessment upon personal property for 1870.

The deduction above named of your U. S. bonds from the amount of your indebtedness is in accordance with instructions issued by the state comptroller, which the commissioners are bound by law to follow. GEO. H. ANDREWS, W. H. KING, NATHANIEL SANDS, *Commissioners of Taxes and Assessments.* To Benjamin T. Babbitt.

SCHEDULE " C."—Extract from instructions to assessors from state comptroller. Albany, May 10th. " * * As-" sessors should, in ascertaining the value of the personal " property taxable, and to be entered upon the assessment " roll, deduct the debts owing by the taxpayer from the gross " value of his personal property, including that exempt by " the laws of the United States, and enter the balance in the · " assessment roll, not exceeding the value of that which is " taxable by law. W. F. ALLEN, *comptroller.*"

At a special term of the Supreme court of the state of New York, held at the court house, in the city of New York, on the 28th day of July, 1870.

Present.—Hon. JOHN R. BRADY, J.

(*Title of cause*). ORDER.—On reading and filing the return of the board of commissioners of taxes and assessments to the writ of *certiorari* issued herein, and on the consent of · the respective counsel for the said relator and respondents,

It is ordered that the hearing on said writ and return be had in the first instance at the general term of this court. A copy. CHARLES E. LOEW, *clerk.*

J. M. SCRIBNER, Jr., *attorney, and*
A. R. LAWRENCE, J.r, *counsel for relator.*

*Facts.* The petitioner is a resident of the city of New York, engaged in business at No. 89 Washington street.

On the 1st of January, 1870, his personal property and as-

sets, other than certain bonds of the United States, amounted to the aggregate sum of $345,895 97.

His debts on said day amounted to $356,084 49.

Between January 1st, and April 29th, 1870, the liabilities and debts of the petitioner increased, and on the 29th day of April, the excess of such debts and liabilities over his assets and personal property was greater than on the 1st day of January, 1870.

He had, between the dates aforesaid, no other assets or personal property than those above mentioned, except the United States bonds hereinafter mentioned, nor were his debts and liabilities, at any period between January 1st and May 1st, 1870, ever less than $356,084 49 ; *and his debts and liabilities were at all times between those respective dates greater than his assets,* excepting therefrom the United States bonds.

· The relator was notified by the respondents that his personal estate had been assessed at the sum of $250,000.

On the 29th day of April, 1870, the relator addressed to the respondents a written notice, verified by his oath, claiming that he was not liable to taxation in any amount for personal estate ; requesting them to strike his name from the assessment rolls, and giving in detail his debts and liabilities, and the amount of his personal estate and assets.

He attended before the respondents on the same day, and offered to be examined under oath. This was declined, and the statement was left by·him with the respondents.

By the statement above referred to, it appeared that the relator, at the time aforesaid, was the owner of bonds of the United States of the par value of $250,000, commonly known as five-twenties, which had been purchased by him in the years 1865, 1866, and 1867, for *permanent investment, and have ever since been held and owned by him, and that none of the said bonds were purchased since January 1st,* 1868.

This fact also appears from the petition as an independent allegation.

The petitioner insisted before the respondents, that as his debts and liabilities exceeded the amount of his personal property, save the bonds aforesaid, he was not liable to be assessed or taxed in any amount for personal estate, and that those bonds could not be taken into consideration *for the purpose of taxation,* either as a *part of his capital,* or for the *reduction of his debts and liabilities.*

He demanded that his name should be struck from the assessment roll.

The respondents declined to do this, but by a notice in writing informed the relator that they had reduced his assessment to $200,000.

By this notice, which, although dated May 26th, was not served on the relator until June 14th, 1870, it appears that the respondents deducted from the relator's debts the par value of his United States bonds, and that they then deducted the balance thus obtained from his assets, and fixed upon the sum of $200,000 as an *equitable* amount for the assessment of his personal property.

The relator thereupon brought a *certiorari.*

The return of the comptrollers is at pp. 12 to 17 of the case.

By the return it appears, that the respondents acted under the instructions given by the comptroller of the state, for which see.

I. The respondents erred in taking into consideration the bonds of the United State, of which the relator was the owner, for the purpose of determining the amount of personal estate for which the relator was liable to be assessed and taxed.

(*a.*) Stock of the United States is not subject to taxation under the laws of a state, and a state law for that purpose is unconstitutional, whether it imposes the tax on United States stock *eo nomine,* or includes it in the aggregate of the

tax-payer's property, to be valued like the rest at its worth. (*Bank of Commerce, N. Y.*, 2 *Black*, 620).

And it has also been held that a tax laid by a state on banks "on a *valuation equal* to the *amount* of their *capital stock* paid in, or secured to be paid in," *is a tax on the property* of the *institution*, and when that property consists of *stocks* of the *Federal Government*, the *law* laying the tax is *void*. (*Bank Tax Case*, 2 *Wallace*, 200).

(*b.*) It seems to the relator to be clear, that the rspondents, in determining the amount of his personal property liable to taxation, have *included* the United States bonds of which he was owner in the aggregate of his property, "*and valued it, like the rest, at its worth.*" (2 *Black*, 260).

The effect of their action is the same as if the respondents had added the $250,000 of bonds to the rest of the relator's assets, and then deducted the amount of his debts from the aggregate sum. In other words, the United States bonds of the relator have been included as an element in the amount to be taxed as the relator's personal estate. And they have been made just as much the subject of taxation as if they had been added to the taxable personal property of the relator.

II. The Revised Statutes provide, that assessors "shall prepare an assessment roll, in which they shall set down, in four separate columns, and according to the best information in their power :

"1st. In the first column the names of all the taxable inhabitants of the town or ward, as the case may be. * * *

"4th. In the fourth column the full value of all the *taxable personal property* owned by such person, *after deducting the just debts owing by him*." (1 *R. S.*, *p*, 363, *sec.* 9, *Edmond's ed.*)

(*a.*) It is obvious that the respondents in this case have not only assessed the relator's bonds as a part of his personal estate, which was an illegal act on their part, under the decisions above referred to, but that they have also violated

the provisions of the Revised Statutes prescribing the mode of arriving at the amount of personal estate, for which an individual is liable to be assessed.

The relator, we submit, was entitled to two exemptions:

1st. He was entitled to have his United States bonds laid entirely out of view, in ascertaining the amount of his personal estate, *because* they were not taxable by law for any purpose; and,

2d. He was entitled, under the law of this state to have his just debts deducted from his *taxable* personal property.

The United States bonds which he owned were not more under the jurisdiction of the respondents or their duputies, than if they had been owned by a third party.

The effect of the action of the respondents was to deprive the relator of his right to escape taxation upon his United States bonds, because they were applied by the respondents to the reduction of another item, to wit, his debts, which item he was entitled by the laws of the state to have deducted *in full* from the amount of his taxable personal property.

(*b.*) The effect also was to deprive the relator of the right to have his just debts deducted as provided by the Revised Statutes.

The respondents should, in the language of the Revised Statutes, have placed in the fourth column of the roll, the full value of all the *taxable* personal property owned by the relator, *after deducting the just debts owing by him.* (1 *R. S.*, 363, *sec.* 9, *Edmond's ed*).

Instead of doing so, they have deducted from his debts $250,000 which was exempted by law from taxation, and have, therefore, decreased his debts in that amount. The relator has not, therefore, been allowed the deduction on account of his debts to which the Revised Statutes entitle him.

III. The precise point presented in this case does not seem to have been passed upon by the courts of this state, but there is a decision in the case of *The People, ex rel., The Lockport City Bank* agt. *The Board of Education of Lockport,*

(46 *Barb.*, 588), which may be cited as authority for the action of the respondents in this case, and which, therefore, demands some consideration here.

In that case, the relator was a bank organized under the general banking law of 1858, with a capital of $104,000.

The defendants caused the relator to be assessed in the sum of $102,400, being the whole amount of its capital stock paid in and secured to be piaid in, and on all its surplus profits, &c.

It appeared, that the bank had $203,500 of United States stocks or bonds, a portion of which was deposited with the bank department, and that the total value of all the other personal property of the bank did not, at the time the assessment was made, exceed, and had not since exceeded, the amount of its debts.

The relator · brought a mandamus to have the assessment stricken from the roll, which was denied, but the court based its decision upon the ground that the provisions of the Revised Statutes requiring the assessors to set down in the assessmrnt roll the full value of all *taxable* personal property of the person, *after deducting the just debts owing by him, had no relation to the taxation of monied corporations.* (46 *Barb.*, 588).

Indeed, the case is an authority for the position taken by the relator in this case; because it is apparent from the reasoning of judge MARVIN, who delivered the opinion of the court, that if the case had been that of an individual, the court would have felt bound to allow a deduction to be made of his *just debts*, irrespective of any reduction on account of United States bonds owned by him.    (46 *Barb.*, 596).

IV.  The true rule applicable to this case is, we conceive, to be found in the opinion delivered by Judge DENIO, in the case of *The People* agt. *The Commissioners of Taxes*, (23 *N. Y.*, 195).

In speaking of the mode in which a bank should be assessed and taxed, he says:

" The position of a bank in this respect is precisely the same as that of an individual tax-payer. It is, as a general rule, assessed and taxed for all its property of every kind; but there is an exception as to such part of it as the constitution and laws of the Union and of the state have, upon special reasons of policy, declared shall be exempted. Whether such exempt property is found in the hands of an individual or in the possession of a corporation taxed upon the actual value of its capital, the rule is the same. *The exempt property is to be deducted from the aggregate valuation.* (23 *N. Y.*, 195).

Now, in this case, no such rule has been followed. There were two privileges to which the relator was entitled ; his bonds were absolutely exempt, and he was entitled to have his debts deducted from the aggregate valuation of his taxable property. Instead of according to him these privileges or rights, the respondents applied his exempted property to the reduction of his debts, which it was his right and privilege under the law of the state to have deducted in full from the valuation of his taxable property.

V. The case which is made by the relator commends itself to the court, as one presented in good faith.

The position of the relator is not that of one who has hastily converted his assets into United States securities for the purpose of avoiding taxation.

On the contrary, it is expressly averred, and it is not denied by the respondents, that all the securities of the relator were bought for *permanent investment*, in the years 1865, 1866, and 1867.

The relator is, therefore, not subject to the charge of attempting to evade the tax laws, but is merely standing upon what he in good faith deems his legal rights.

VI. It is submitted, in conclusion, that the papers show that the debts and liabilities of the relator exceeded his

*taxable* personal property at the time this assessment was made, and at all times, when the said assessment was before the respondents, and that he is entitled, therefore, to the relief which he seeks by this proceeding.

VII. The assessment in question should be declared illegal and void, and should be set aside.

C. A. ARTHUR, *attorney, and*
CHARLES E. MILLER, *counsel for respondents.*

*Statement.*—This matter comes before the court upon a *certiorari* isssued under the act of 1859, to review the decisions of the respondents as to the assessment of the personal property of the relator for the year 1870.

This personal property, as appears by his own statement is as follows:

Amount invested in business, $345,895 92. Amount invested in United States stocks, known as five-twenties, $250,000 00. Total, $595,895 92. Less debts, $356,-184 49. Balance, $239,711 43.

The respondents fixed the sum of two hundred thousand dollars, as the value of the personal property of relator, subject to taxation.

Relator claims, however, that in assessing him the commissioners are bound to deduct his debts solely from such of his personal property as is taxable, and that such property is insufficient to pay his debts. That he is taxably insolvent, although worth in personal property two hundred and forty thousand dollars over and above all his indebtedness.

I. The tax commissioners in making their assessments are governed by the provisions of the Revised Statutes. (1 *R. S. p.*, 390, *et seq*).

Section 9 of article 2, provides that the commissioners shall prepare an assessment roll, in the fourth column whereof they shall set down " the full value of all the taxable personal

poperty owned by such person, after deducting the just debts owing by him."

II. The relator to maintain his claim for exemption must establish the proposition, that the legislature by the above cited provision of law intended that the debts should be deducted solely from the preperty liable to taxation.

III. Such was not the intention of the legislature.

In ascertaining such intention by construction of the statutes, two great underlying principles must be constantly borne in mind :

1st. That the power to levy and collect taxes being an incident of sovereignty, without which no government could exist, all the statutes in derogation of such authority and exempting particular persons or particular classes of property, are to be strictly construed, and confined to their narrowest meaning (*Blackwell on Tax Titles*, *pp* 2, 406 to 411).

2*d*. That equality in taxation is the principle by which the legislative power is controlled in the levy of taxes (*Blackwell on Tax Titles*, *pp* 6–6).

IV. Bearing in mind these principles, it is insisted that the intention of the legislature, as evidenced by the section cited, was simply to establish a rule by which the assessors should ascertain what a person is really worth.

Had they intended that the debts should have been deducted solely from taxable personal property, they would have inserted the word "therefrom," so that the section would read " after deducting therefrom."

They used the words " taxable personal property " as descriptive of what the assessors should insert in their lists, not of what the debt should be deducted from.

V. The exemption that relator claims is not only an exemption of his bonds from taxation, but also from their being considered as liable for the payment of his debts when taxation is concerned. Its practical effect is to create a double exemption.

The doctrine is full of danger, and if carried to its full

extent must seriously cripple the resources of the state government. The very debts that a person claims to be deducted from his taxable property, are incurred for the purchase of United States stocks, also exempt.

Any one could, as in the present instance, carry on a large business, own an amount of taxable property protected by the laws of the state and at the expense of the other inhabitants of the state, and yet shirk all obligations to contribute to such expense by refusing to apply this personal property not taxable, to the payment of such debts.

VI. The decision of the respondents should be affirmed.

On the hearing at the general term January, 1871, the court ordered judgment on the writ of certiorari for relator, and directed that the assessment should be vacated and stricken from the rolls.

There was no written opinion, the decision being rendered on the argument.