## NATIONAL LIFE INSURANCE COMPANY *v.* UNITED STATES.

No. 228.   Argued April 12, 1928.—Decided June 4, 1928.

*Messrs. Wm. Marshall Bullitt* and *J. Harry Covington,* with whom *Mr. George B. Young* was on the brief, for petitioner.

The effect of the statute is to include all tax-exempt income in the " net income " on which the 10% tax is levied. [This was demonstrated by interesting algebraic methods.] Although the National Life derived nearly one-third of its entire gross income from tax-exempt securities, yet it had to pay exactly the same tax as it would have paid if its whole income were from taxable securities. As aptly said by Justice McReynolds in *Nichols* v,

*Coolidge*, 274 U. S. 531, 541, " Taxes are very real things and statutes imposing them are estimated by practical results."

The effect of the Act was to accomplish a purpose not to give the taxpayer any exemption on his tax-exempt bonds, by the simple expedient of first allowing the exemption, and then providing that any taxpayer, having such exemption, should have his authorized deductions *ipso facto* reduced by the exact amount of his tax-exemptions.

Of two companies, identic in size of assets, income and business, A, with a million dollars tax-exempt income, pays exactly the same tax as B, with no tax-exempt income; and so the practical effect of the Act is to tax A's tax-exempt income. While, with the same income subject to taxation, A pays vastly more than B solely because A has invested in U. S. bonds.

Or, stated from a slightly different angle, while B, having no tax-exempt securities, is allowed to deduct 4% of its reserve, A, solely because it owns tax-exempt securities, is allowed a deduction diminished in the precise amount of its tax-exempt income; so that A, solely because it owns tax-exempt securities, is taxed upon its other taxable income a greater tax than B, who does not own any tax-free bonds. The sole basis of classification between A and B, is A's ownership of tax-exempt securities; and that differentiation is made the basis of giving B a correspondingly greater reduction.

Section 245 (a) (2) is unconstitutional in so far as it reduces the 4% of Reserves exemption by the exact amount of the National Life's tax-exempt income; and this is so because its purpose and effect are to tax the income from tax-exempt bonds. Congress cannot tax (1) instrumentalities of the States, nor (2) the income from U. S. bonds which it has expressly exempted from taxation. The effect of § 245 (a) (2) is to tax the income

from tax-free securities. *Northwestern Mutual Life Ins. Co.* v. *Wisconsin,* 275 U. S. 136; *Evans* v. *Gore,* 253 U. S. 245; *Farmers Bank* v. *Minnesota,* 232 U. S. 516; *Miller* v. *Milwaukee,* 272 U. S. 713.

A chronological review of authorities condemns the plan embraced in § 245 (a) (2). *United States* v. *Ritchie,* Fed. Cas. 16,168; *People* v. *Commissioners,* 41 How. Pr. 459; *People* v. *Weaver,* 100 U. S. 539; *Farmers Bank* v. *Minnesota,* 232 U. S. 516; *Evans* v. *Gore,* 253 U. S. 245; *Miles* v. *Graham,* 268 U. S. 501.

Although *Evans* v. *Gore* and *Miles* v. *Graham, supra,* are not as directly in point as others of the cases reviewed, they are important as establishing the doctrine that if income (whether judicial salary or interest from tax-free bonds) is exempt from diminution or seizure by governmental authority, it cannot be diminished or taken by the device of compelling its inclusion in " gross " income as the basis from which " net " income is ascertained. The exempted income must be, for purposes of taxation, treated as non-existent.

In the case at bar, the National Life insists that its interest from the state and federal bonds should be treated, for tax purposes, as being as completely non-existent as *Evans* v. *Gore* and *Miles* v. *Graham* held that a judicial salary should be treated as non-existent when it came to tax purposes.

Three cases are directly in point, viz., *City of Waco* v. *Amicable Life Ins. Co.* (Tex.), 230 S. W. 698; *id.,* 248 S. W. 332; *Motor Car Co.* v. *Detroit,* 232 Mich. 245; and *Miller* v. *Milwaukee,* 272 U. S. 713.

If the device of § 245 (a) (2) be sustained, then the door will be open wide for the States, by simple statutory amendments, to nullify many of this Court's most important rulings as to tax-exempt property, for example, *Evans* v. *Gore,* 253 U. S. 245; *People* v. *Weaver,* 100 U. S. 539; *L. & J. Ferry Co.* v. *Kentucky,* 188 U. S. 385; *Bank*

of California v. Richardson, 248 U. S. 476; Frick v. Pennsylvania, 268 U. S. 473; Miller v. Milwaukee, 272 U. S. 713; Northwestern Mutual Life Ins. Co. v. Wisconsin, 275 U. S. 136.

The power of Congress to grant or refuse deductions does not authorize " unconstitutional conditions " of deduction. Federal Land Bank v. Crosland, 261 U. S. 374; Miller v. Milwaukee, 272 U. S. 713; Nichols v. Coolidge, 274 U. S. 531.

Congress had the absolute power to grant, or to refuse to grant, deductions in the shape of a percentage of the Reserves. It could have made such deduction, if allowed at all, 1%, 2%, 3%, or any other per cent that, in its discretion, the equitable and economic necessities of the case required. But, it could not lawfully authorize a conditional deduction (1) where the full deduction was allowed, if a company held no tax-free securities; whereas (2) if a company held tax-free securities, the deduction was made smaller, in the exact amount of such tax-free securities,—so that the effect was to impose a tax upon tax-free securities, in the precise amount that they would have been taxed if a tax had been levied upon them eo nomine.

The whole point is that the ownership of tax-exempt securities, cannot be made the basis of a classification, whose sole purpose is to tax more heavily those who hold tax-exempt securities, than those who do not hold them.

The Government can tax anything it pleases, except tax-exempts; but it must deduct tax-exempts from anything on which it imposes taxes. It can give any further deductions that it pleases, and it can ascertain what that deduction shall be in almost any way it pleases.

It can make that deduction equivalent to the man's debts, or to his tangible property, or to his bank stocks, or to his agricultural products, or to any fraction of any of those, but the qualification is, that it cannot make the

ownership of tax-exempts in any way a factor in determining the amount of the deduction. In other words, it cannot use the ownership of tax-exempts in any way so that such ownership shall work out adversely to any citizen owning such tax-exempt securities. This is an implied and necessary limitation on the power to give a deduction that would otherwise be wholly within the discretion of the Legislature.

The State, in making any deduction or in granting any privilege, cannot make the ownership of tax-exempt securities result in the taxpayer getting a less benefit or privilege than he would have had if he had not owned them, because the minute you do that, you are putting a burden on the ownership of the tax-exempt securities. It cannot annex to the privilege of a deduction the surrender or subtraction of the constitutional privilege of tax exemption. *Terrall* v. *Burke,* 257 U. S. 529.

The Act purports to be something that it is not. While it is true the Government could tax the gross income, minus the tax-exempt income, yet it cannot tax gross income, minus 4% of Reserves, without giving the benefit of tax-exempt income. It is absurd to subtract the tax-exempt income and then add it back on. Regard must be had to the substance of what is done and not merely to the form. *Nichols* v. *Coolidge,* 274 U. S. 531; *Child Labor Tax Case,* 259 U. S. 20; *Hill* v. *Wallace,* 259 U. S. 44.

The tax cannot be sustained upon the theory that it is measured by income regardless of the tax-free character of such income. *Frick* v. *Pennsylvania,* 268 U. S. 473.

*Evans* v. *Gore,* 253 U. S. 245; *Gillespie* v. *Oklahoma,* 257 U. S. 501; *Miller* v. *Milwaukee,* 272 U. S. 713; *Nichols* v. *Coolidge,* 274 U. S. 531; *Northwestern Mutual Ins. Co.* v. *Wisconsin,* 275 U. S. 136, established the doctrine that where the principal, as here, is absolutely immune from taxation, even net income partially derived

therefrom cannot be taxed; and that inquiry will be permitted into the income taxed, for the purpose of ascertaining whether it comes from a source which is itself untaxable.

The tax is an income tax and not an excise tax. Distinguishing *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; *Stanton* v. *Baltic Mining Co.,* 240 U. S. 103; *Stratton's Independence* v. *Howbert,* 231 U. S. 399; and *Brushaber* v. *Union Pacific,* 240 U. S. 1.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* was on the brief, for the United States.

Petitioner has not been taxed upon any part of its income from tax-exempt securities, and the law does not impose any tax thereon. If the gross income of a life insurance company consisted wholly of interest from such securities, it would all be deducted, no matter how much it might be. The exemption is absolute and unqualified. The misconception underlying the petitioner's argument is that for some unexplained reason a life insurance company is entitled as of right to a further deduction of 4% of its legal reserve without reference to the amount of that reserve or of the securities in which it is invested.

Conceding that Congress has no power to tax income from state and municipal bonds, and has power to tax income from rents, stock dividends, railroad bonds, and mortgages, it is obvious that it could exempt income from any one or all of these forms of investment without thereby infringing upon the immunity of the state and municipal bonds from taxation. The immunity of one class of security from taxation does not impose upon Congress an obligation to tax all other forms of investment.

Neither the Bill upon its face nor what was said of it by the committees having it in charge justifies the accusation that Congress was attempting by subterfuge to

override its constitutional limitations or to impose an unrighteous system of taxation upon these companies.

No complaint may fairly be made because the statute does not permit petitioner to deduct the same income twice. The single fact of importance is that the tax-exempt income of the companies is given complete exemption from taxation under any and all circumstances.

Petitioner had no inherent right to the deduction of any amount based upon its reserves. Deductions are a matter of legislative discretion and authority for all deductions must be found in the statute. *New Creek Co.* v. *Lederer,* 295 Fed. 433; *People ex rel. Bijur* v. *Barker,* 155 N. Y. 330; *Smalley* v. *Burlington,* 63 Vt. 443.

Upon constitutional grounds no complaint could have been made by any company had Congress omitted entirely the deductions specified in § 245 (a) (2). The fact that an insurance company holding no tax-exempt securities will under certain circumstances pay no greater tax than will another company having tax-exempt securities, is not discriminatory in a legal sense. Cf. *Brushaber* v. *Union Pacific R. R. Co.,* 240 U. S. 1. It is not discrimination against tax-exempt securities to give exemption to other securities which could lawfully be taxed, and no corporation holding securities which may not constitutionally be taxed has a right to insist that its neighbor, owning securities which are within the taxing power, shall be taxed. The uniformity required by Art. I, § 8, cl. 1 of the Constitution, means geographical uniformity. *Knowlton* v. *Moore,* 178 U. S. 41; *Patton* v. *Brady,* 184 U. S. 608; *Barclay & Co.* v. *Edwards,* 267 U. S. 442.

Congress has authority to adjust its income taxes according to its discretion within the bounds of geographical uniformity. The Revenue Act of 1921 treats all insurance corporations alike, and if in its application a

tax in particular instances may seem to bear upon one corporation more than another, this is due to differences in their circumstances, not to lack of uniformity in the tax imposed. *LaBelle Iron Works* v. *United States*, 256 U. S. 377.

No company under this statute can possibly be taxed by reason of its ownership of tax-exempt securities more heavily than those which do not hold them, other things being equal, and " tax-exempt securities " are under all conditions deducted from that upon which the taxes are imposed.

*Mr. Charles Evans Hughes* on behalf of The Metropolitan Life Insurance Company, The Mutual Benefit Life Insurance Company, and The Prudential Insurance Company, as *amici curiae*, filed a brief by special leave of court, sustaining the legislation in question.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

In 1921, departing from previous plans, Congress laid a tax on life insurance companies based upon the sum of all interests and dividends and rents received, less certain specified deductions—(1) interest derived from tax exempt securities, if any; (2) a sum equal to four per centum of the company's legal reserve diminished by the amount of the interest described in paragraph (1); (3) other miscellaneous items—seven—not presently important.

Petitioner maintains that, acting under this plan, the Collector illegally required it to pay taxes, for the year 1921, on federal, state and municipal bonds; and it seeks to recover the amount so exacted. The Court of Claims gave judgment for the United States.

The Revenue Act of 1921, approved November 23, 1921, Chap. 136, Title II, Income Tax (42 Stat. 227, 238, 252, 261) provides—

"Sec. 213. That for the purposes of this title (except as otherwise provided in section 233) [the exceptions not here important] the term 'gross income'—

(a) Includes gains, profits, and income . . .

(b) Does not include the following items, which shall be exempt from taxation under this title:

(1) (2) and (3) [not here important]

(4) Interest upon (a) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia; or (b) securities issued under the provisions of the Federal Farm Loan Act of July 17, 1916; or (c) the obligations of the United States or its possessions; . . .

"Sec. 230. That, in lieu of the tax imposed by section 230 of the Revenue Act of 1918, there shall be levied, collected, and paid for each taxable year upon the net income of every corporation a tax at the following rates:

(a) For the calendar year 1921, 10 per centum of the amount of the net income in excess of the credits provided in section 236; and

(b) For each calendar year thereafter, 12½ per centum of such excess amount. . . .

"Sec. 243. That in lieu of the taxes imposed by sections 230 [general corporation tax] and 1,000 [special taxes on capital stock] and by Title III [war profits and excess profits taxes], there shall be levied, collected, and paid for the calendar year 1921 and for each taxable year thereafter upon the net income of every life insurance company a tax as follows:

(1) In the case of a domestic life insurance company, the same percentage of its net income as is imposed upon other corporations by section 230 [ten per cent for 1921, twelve and one-half thereafter];

(2) In the case of a foreign life insurance company, the same percentage of its net income from sources within the United States as is imposed upon the net income of other corporations by section 230. . . .

"Sec. 244. (a) That in the case of a life insurance company the term 'gross income' means the gross amount of income received during the taxable year from interest, dividends, and rents.

(b) The term 'reserve funds required by law' includes . . .

"Sec. 245. (a) That in the case of a life insurance company the term 'net income' means the gross income less—

(1) The amount of interest received during the taxable year which under paragraph (4) of subdivision (b) of section 213 is exempt from taxation under this title. [interest on tax-exempt securities];

(2) An amount equal to the excess, if any, over the deduction specified in paragraph (1) of this subdivision of 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, plus [certain other sums not here important] . . ."

(3) (4) (5) (6) (7) (8) and (9) grant other exemptions not now important.

The mean of petitioner's reserve funds for 1921 was $67,381,877.92. Four per centum of this is $2,695,279.12.

During 1921 interest derived from all sources amounted to $3,811,132.78; from dividends, nothing; from rents, $13,460.00. Total, $3,824,592.78. $1,125,788.26 of this interest came from tax exempt securities—$873,075.66 from state and municipal obligations, and $252,712.60 from those of the United States.

The Collector treated interest plus dividends plus rents, $3,824,592.78, as gross income, and allowed deductions amounting to $2,899,690.79, made up of the following items: $1,125,788.26, interest from tax exempt securities; $1,569,490.86, the difference between 4% of the reserve fund ($2,695,279.12) and ($1,125,788.26) interest received from exempt securities; miscellaneous items, not contested

and negligible here, $204,411.67. After deducting these from total receipts ($3,824,592.78—$2,899,690.79), there remained a balance of $924,901.99. This he regarded as net income and upon it exacted ten per centum, $92,490.20.

If all interest received by the Company had come from taxable securities, then, following the statute, there would have been deducted from the gross of $3,824,592.78—4% of the reserve, $2,695,279.12, plus the miscellaneous items $204,411.67—$2,899,690.79, and upon the balance of $924,901.99 the tax would have been $92,490.20. Thus it becomes apparent that petitioner was accorded no advantage by reason of ownership of tax exempt securities.

Petitioner maintains that the result of the Collector's action was unlawfully to discriminate against it and really to exact payment on account of its exempt securities, contrary to the Constitution and laws of the United States. Also that diminution of the ordinary deduction of 4% of the reserves because of interest received from tax exempt securities, in effect, defeated the exemption guaranteed to their owners.

The portion of petitioner's income from the three specified sources which Congress had power to tax—its taxable income—was the sum of these items less the interest derived from tax exempt securities. Because of the receipt of interest from such securities, and to its full extent, pursuing the plan of the statute, the Collector diminished the 4% deduction allowable to those holding no such securities. Thus, he required petitioner to pay more upon its taxable income than could have been demanded had this been derived solely from taxable securities. If permitted, this would destroy the guaranteed exemption. One may not be subjected to greater burdens upon his taxable property solely because he owns some that is free. No device or form of words can deprive him of the exemption for which he has lawfully contracted.

The suggestion that as Congress may or may not grant deductions from gross income at pleasure, it can deny to one and give to another is specious, but unsound. The burden from which federal and state obligations are free is the one laid upon other property. To determine what this burden is requires consideration of the mode of assessment, including, of course, deductions from gross values. What remains after subtracting all allowances is the thing really taxed.

*United States* v. *Ritchie* (1872) Fed. Cases 16,168.

Ritchie was the state's attorney for Frederick County, Md. The federal statute allowed an exemption of $1,000. The collector claimed that if Ritchie's salary was held free from taxation, one thousand dollars of it should be applied to the exemption clause. Giles, J., held: " The United States could not apply the compensation of a state officer to the satisfaction of the exemption alone, because that would, indirectly, make his income from such source liable to the taxation from which it is exempt; that to exhaust the exemption clause by taking the amount out of his official income, would be to make it, in effect, subject to the revenue law, and to deny to a state's officer the advantage of the state's exemption, and that therefore the official income of defendant was not to be taken into consideration in the assessment of the tax."

*People, etc.* v. *Commissioners* (1870) 41 How. Prac. Reports, 459.

Held:—That in determining the amount of personal property of an individual, by assessors or commissioners of taxes, for the purpose of taxation, stocks and bonds of the United States are to form no part of the estimate. They cannot be excluded or deducted from the amount of his assets, liable to taxation, for it is error to include them in such assets.

*Packard Motor Car Co.* v. *City of Detroit* (1925) 232 Mich. 245.

Held:—That tax exempt credits may not be taxed, directly or indirectly, and in levying a tax on property they must be treated as nonexistent. The provision of Act No. 297, Pub. Acts 1921, providing that if the person to be taxed "shall be the owner of credits that are exempt from taxation such proportion only of his indebtedness shall be deducted from debts due or to become due as is represented by the ratio between taxable credits and total credits owned, whether taxable or not," is void as an interference with the power of the United States Government to raise money by issuance of tax exempt obligations and is in conflict with the Constitution of the United States.

See also *City of Waco* v. *Amicable Life Ins. Co.* (Tex.) 230 S. W. 698; *id.*, 248 S. W. 332.

*Miller, et al., Executors* v. *Milwaukee*, 272 U. S. 713.

Held:—That where income from bonds of the United States which by Act of Congress is exempt from state taxation is reached purposely, in the case of corporation-owned bonds, by exempting the income therefrom in the hands of the corporations, and taxing only so much of the stockholder's dividends as corresponds to the corporate income not assessed, the tax is invalid.

It is settled doctrine that directly to tax the income from securities amounts to taxation of the securities themselves, *Northwestern Mutual Life Ins. Co.* v. *Wisconsin*, 275 U. S. 136. Also that the United States may not tax state or municipal obligations. *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, 521.

How far the United States might repudiate their agreement not to tax we need not stop to consider. Counsel do not claim that here state obligations should have more favorable treatment than is accorded to those of the Federal Government. The Revenue Act of 1921 (Sec. 213) expressly disavows any purpose to tax interest upon the latter's obligations.

Section 1403 provides—

"That if any provision of this Act, or the application thereof to any person or circumstances, is held invalid, the remainder of the Act, and the application of such provision to other persons or circumstances, shall not be affected thereby."

Congress had no power purposely and directly to tax state obligations by refusing to their owners deductions allowed to others. It had no purpose to subject obligations of the United States to burdens which could not be imposed upon those of a State.

Considering what has been said, together with the saving clause just quoted, and the manifest general purpose of the statute, we think that provision of the Act which undertook to abate the 4% deduction by the amount of interest received from tax exempt securities cannot be given effect as against petitioner under the circumstances here disclosed. It was unlawfully required to pay $92,490.20 and is entitled to recover.

The judgment of the Court of Claims must be reversed. If within ten days counsel can agree upon a decree for entry here, it may be presented. Otherwise, the cause will be remanded to the Court of Claims for further proceedings in conformity with this opinion.

*Reversed.*

Mr. Justice Brandeis, dissenting.

Ever since Corporation Tax Act, August 5, 1909, c. 6, § 38, 36 Stat. 11, 112, the United States has laid upon life insurance companies a special excise tax measured by net income. But the several revenue acts have varied as to the rate of the tax and also as to the method of computing the taxable income. That is, the items to be included in gross income and the items to be allowed as deductions have been changed from time to time. In the earliest act no deduction was made of interest on tax-exempt bonds. Until 1921, the gross income considered included premium

receipts.[1] See *New York Life Insurance Co.* v. *Edwards*, 271 U. S. 109; *McCoach* v. *Insurance Co. of North America*, 244 U. S. 585. Compare *Penn Mutual Life Insurance Co.* v. *Lederer*, 252 U. S. 523. The inclusion of premium receipts, with corresponding deductions, was found to be unsatisfactory. After much consideration, Congress, upon consultation with the life insurance companies and with the approval of at least most of them, substituted a new basis for computing the tax.[2] Act of November 23, 1921,

---

[1] Act of August 5, 1909, c. 6, § 38, 36 Stat. 11, 112; Act of October 3, 1913, c. 16, 38 Stat. 114, 172–173; Act of September 8, 1916, c. 463, 39 Stat. 756, 765–768; Act of February 24, 1919, c. 18, 40 Stat. 1057, 1075–1079. Under all these acts the companies were allowed to deduct the amount paid on policies (except as dividends) and the amount required by law to be added to their reserves.

[2] In a memorandum filed with the Committee on Ways and Means of the House of Representatives at the time when the Revenue Bill of 1918 was being considered, the Association of Life Insurance Presidents stated: "Although only a minor proportion of the premiums received by the insurance companies constitutes true income, the greater part being the policyholders' contributions toward current losses and to permanent capital, the entire premium income is included in gross income under the income-tax law. This departure from principle is, however, rendered innocuous through deductions expressly allowed by the statute." Hearings before the Committee on Ways and Means, House of Representatives, 65th Cong., 2d Sess., on the Proposed Revenue Act of 1918, Pt. I, p. 811. The Senate Finance Committee recommended in 1918 the plan later included in the Act of 1921, namely, that the basis of the tax be changed so as to include only the investment income, and that the deductions should be similarly limited. Senate Report, 65th Cong., 3rd Sess., No. 617, p. 9. In presenting the bill Senator Simmons stated that it had been framed after consultation with many representatives of the life insurance companies. 57 Cong. Rec. 254. The plan was adopted by the Senate, but had to be abandoned in conference.

At the Annual Meeting of Life Insurance Presidents, December, 1920, it was stated that the basis of the income tax was unsatisfactory both to the companies and to the Government, and that a plan similar to that embodied in the Senate amendment to the 1918 bill should be adopted. Proceedings of the 14th Annual Meeting, pp.

c. 136, §§ 243–245, 42 Stat. 227, 261. The validity of that Act is now attacked by the National Life Insurance Company. Other companies have, as *amici curiae,* filed a brief in support of the legislation.

The gross income to be considered under the Act of 1921 is limited to that received " from interest, dividends, and rents." In order to ascertain the taxable income, this gross investment income is to be reduced by nine classes of deductions, so far as severally applicable. Only two of these are material here—the provisions in paragraphs (1) and (2) of § 245. Taken together, they provide for the deduction from the gross investment income of the interest from tax-exempt bonds or of an amount equal to 4 per cent of the mean insurance reserve, whichever sum is the greater. That is, paragraph (1) provides for a deduction of interest received from tax-exempt bonds; [3]

140–141, 143–145. The Revenue Bill of 1921, as introduced in the House, contained the plan of taxation which had been adopted by the Senate in 1918. House Report, 67th Cong., 1st Sess., No. 350, p. 14. It was stated to the Senate Finance Committee that " all the life insurance companies are behind that scheme and are satisfied with it." Hearings before the Senate Committee on Finance, 67th Cong., 1st Sess., on H. R. 8245, September 1–October 1, 1921, p. 84. See also Senate Report, 67th Cong., 1st Sess., No. 275, p. 20; Brief of *Amici Curiae,* p. 1.

[3] The scope of the deduction to be made on account of tax-exempt securities is defined by paragraph 4 of subdivision (b) of § 213 of the Act: " Interest upon (a) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia; or (b) securities issued under the provisions of the Federal Farm Loan Act of July 17, 1916; or (c) the obligations of the United States or its possessions; or (d) bonds issued by the War Finance Corporation. In the case of obligations of the United States issued after September 1, 1917 (other than postal savings certificates of deposit) and in the case of bonds issued by the War Finance Corporation, the interest shall be exempt only if and to the extent provided in the respective Acts authorizing the issue thereof as amended and supplemented, and shall be excluded from gross income only if and to the extent it is wholly exempt to the taxpayer from income, war-profits and excess-profits taxes." 42 Stat. 227, 238.

and this deduction is to be made to the full extent, under all circumstances. Paragraph (2) provides that there shall be deducted such amount, if any, as is required to be added to the income from the tax-exempt securities, to equal 4 per cent of the mean insurance reserve. Thus, no deduction under paragraph (2) will be allowed, if the income from the tax-exempt securities equals or exceeds 4 per cent of the required reserve. And if the Company has any income from tax-exempt bonds, it will not receive the full deduction of 4 per cent of the required reserve, under paragraph (2). The reason for allowing the deduction of 4 per cent of the reserve is that a portion of the " interest, dividends, and rents " received have to be used each year in maintaining the reserve, *i. e.*, adding to it on the basis of a certain interest rate, varying from 3 per cent to 4 per cent according to the requirements of the statutes of the several States.

The National Life Insurance Company had, during the year 1921, gross investment income amounting to $3,824,-592.78. Of this income, $1,125,788.26 was interest on tax-exempt bonds. Four per cent of the Company's insurance reserve amounted to $2,695,279.12. As the interest received from tax-exempt bonds was less than 4 per cent upon its reserve, the Company was allowed under paragraph (2) the additional deduction of a sum equal to the difference between these two, namely $1,569,490.86. The aggregate of the deductions allowed under paragraphs (1) and (2) was thus no greater than the deduction would have been if all the Company's income had been derived from taxable securities.

That the return and the payment required of the Company was in exact accord with the Act is conceded. The contention is that the Act is unconstitutional, because as applied it renders the tax-exempt privilege of no value to the Company. The argument is that the tax burden from which such federal and state obligations are free is

the one laid upon other property; that a person may not be subjected to greater burdens upon his taxable property because he owns some that is free; that here the Company has been required to pay more upon its taxable income than could have been demanded under the statute had the income been derived solely from taxable securities; that to permit this to be done would destroy the guaranteed exemption for which the bondholder lawfully contracted, and would enable the Federal Government to burden the States; and that this cannot be done, whatever the device or form of words employed by Congress. The argument rests, I think, upon misconceptions.

Some of the tax-exempt bonds held by the Company were state (including county, district and municipal) bonds. Some were United States bonds which in terms provide for exemptions from federal taxes. With the holders of state bonds the United States has entered into no contract. Whatever rights the Company may have as to them must flow either directly from the terms of the federal act which provides for the deductions to be made in computing the net income, or must arise indirectly out of the Constitution. The objection made, and sustained by the Court, is that the Act is void because thereby Congress taxes the bonds, an instrumentality of the States, or that it discriminates against the holder. Compare *Collector* v. *Day*, 11 Wall. 113, 124; *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, 521–524. As to the United States bonds, the claim is that the due process clause of the Fifth Amendment is violated, because the Act nullifies the provision in the bond that it shall be exempt from federal taxation.[4] On this contention the Court does not

---

[4] The precise terms of the exemption are not the same in all issues of United States bonds. Thus, bonds issued under the First Liberty Loan are declared to be " exempt, both as to principal and as to interest, from all taxation, except estate or inheritance taxes, imposed by authority of the United States, or its possessions, or by any State

pass. Compare *Brushaber* v. *Union Pacific R. R. Co.*, 240 U. S. 1, 25. But it holds, nevertheless, that there must be deducted the full 4 per cent of the reserve in addition to the tax-exempt interest from federal as well as from state securities. It interprets the will of Congress to be that such a deduction should be made, because otherwise federal obligations would have less favorable treatment than must be accorded state bonds.

As the tax imposed by the Act of 1921 is on net income, I should have supposed that it was settled by *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107, 147, 162, that the inclusion in the computation of the interest on tax-exempt bonds, like the inclusion of the receipts from exports, *Peck* v. *Lowe*, 247 U. S. 165; *Barclay & Co.* v. *Edwards*, 267 U. S 442, 447, or the inclusion in a state tax of receipts from interstate commerce, *United States Glue Co.* v. *Oak Creek*, 247 U. S. 321, 326; *Shaffer* v. *Carter*, 252 U. S. 37, 57; *Underwood Typewriter Co.* v. *Chamberlain*, 254 U. S. 113, 120, would not have rendered the tax objectionable. Compare *Interboro Rapid Transit Co.* v. *Sohmer*, 237 U. S. 276; 284. But here it is indisputable that no part of the income derived from tax-exempt bonds is taxed. For the statute requires that in computing the taxable income the full amount of the interest on tax-exempt securities should be deducted. The only question that can arise in any case is how much additional shall be allowed as a deduction under paragraph (2).

The only factual basis for complaint by the Company is that, although a holder of tax-exempt bonds, it is,

---

or local taxing authority." In the Second and later loans the bonds are subject to " graduated additional income taxes, commonly known as surtaxes, and excess-profits and war-profits taxes, now or hereafter imposed by the United States," except that the interest on an amount not in excess of a certain figure is free from tax. All the bonds held by the petitioner were, by the statutes under which they were issued, exempt from the normal tax.

in respect to this particular tax, no better off than it would have been had it held only taxable bonds. Or, to put it in another way, the objection is not that the plaintiff is taxed on what is exempt, but that others, who do not hold tax-exempt securities, are not taxed more. But neither the Constitution, nor any Act of Congress, nor any contract of the United States, provides that, in respect to this tax, a holder of tax-exempt bonds, shall be better off than if he held only taxable securities. Nowhere can the requirement be found that those who do not hold tax-exempt securities shall, in respect to every tax, be subjected to a heavier burden than the owners of tax-exempt bonds.

It is true that the tax-exempt privilege is a feature always reflected in the market price of bonds. The investor pays for it. But the value of the tax-exempt feature, like the value of the bond itself, may fluctuate for many reasons. Its value may be lessened by changing, through legislation, the supply or the demand. It may be lessened by laws which have no relation to taxation, as was done when the Federal Reserve legislation changed the basis for securing notes of issue.[5] The recent successive reductions in federal surtaxes[6] lessened for many holders the relative value of tax-exempt bonds. The narrowing thereby of an existing use for the tax-exempt bonds was important enough to affect the market value. Some of the States lessened the value of United States bonds to many a holder, when they substituted a small tax

[5] For the effect of the pending Federal Reserve legislation and its enactment (December 23, 1913, c. 6, 38 Stat. 251), on the market value of United States bonds held to secure national bank circulation, see Commercial & Financial Chronicle, Vol. 97, pp. 91, 153, 271, 1083; Vol. 98, pp. 131, 200.

[6] Act of June 2, 1924, c. 234, 43 Stat. 253, 265; Act of February 26, 1926, c. 27, 44 Stat. 9, 21.

on intangibles, or an income tax, for the heavy general property tax to which all taxable bonds had theretofore been subject. The amendment of the state constitution involved in *Florida* v. *Mellon,* 273 U. S. 12, by which Florida prohibited its Legislature from imposing taxes on succession or on income, and offered to the rich a haven of tax immunity, reduced the potential demand for, and hence the value of, tax-exempt bonds. By all such legislation the relative advantage, with respect to some taxes, of tax-exempt over taxable bonds was lessened. With respect to other taxes the relative advantage was wholly removed. And the relative value of the tax-exempt bonds to the holder was thereby necessarily reduced. But obviously that lessening of relative advantage and of value did not impair any legal right possessed by the holder.

The holder of tax-exempt bonds often finds himself with respect to taxes imposed under legislation other than the Act of 1921, no better off than if he had owned only taxable bonds. But this Court has never held a statute invalid on that ground. A state inheritance or legacy tax is valid although the tax is as high when the estate transmitted consists in part of bonds of the United States as when none are held. *Plummer* v. *Coler,* 178 U. S. 115; *Orr* v. *Gilman,* 183 U. S. 278. Compare *Greiner* v. *Lewellyn,* 258 U. S. 384. This is true also of the tax upon Connecticut savings banks upheld in *Society for Savings* v. *Coite,* 6 Wall. 594; of that upon Massachusetts savings banks upheld in *Provident Institution* v. *Massachusetts,* 6 Wall. 611; of that upon Massachusetts manufacturing corporations, upheld in *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632; of that upon insurance corporations, upheld in *Home Insurance Co.* v. *New York,* 134 U. S. 594. Under all of these statutes a corporation holding bonds of the United States was obliged to pay the same amount in taxes that it would have been required to pay if it had

not been a holder of United States bonds.[7] Similarly it has been held, in a long line of cases sustaining state laws taxing shares in a national bank to the shareholders, that no deduction need be made in the assessment on account of the United States bonds constituting a part of the assets of the bank by which the value of the shares is measured. *Van Allen* v. *Assessors,* 3 Wall. 573, 583; *People v. Commissioners,* 4 Wall. 244, 255; *Peoples National Bank of Kingfisher* v. *Board of Equalization,* 260 U. S. 702; *Des Moines National Bank* v. *Fairweather,* 263 U. S. 103, 114.

The mere fact that the National Life Insurance Company was not allowed a larger deduction than would have been available if it had held only taxable bonds, cannot, therefore, render the taxing provision void. Whether there is in the provision for deductions some element of discrimination which renders it unconstitutional, remains for consideration. It may be assumed—if the term is used with legal accuracy—that the United States may not discriminate against state bonds or against its own outstanding bonds. Discrimination is the act of treating differently two persons or things, under like circumstances. Compare *Merchants Bank* v. *Pennsylvania,* 167 U. S. 461, 463. Here the sole complaint is that the two, although the circumstances are unlike, are treated equally. The claim is not that the holder of tax-exempt bonds is denied a privilege enjoyed by others. It is that the holder of tax-exempt bonds should be given in respect to another matter a preferred status. The preference claimed is that it shall be allowed, in addition to tax exemption on its bonds, a deduction of 4 per cent of the reserve. The Constitution does not require the United States to hold out special inducements to invest in state bonds, compare *Florida* v. *Mellon,* 273 U. S. 12, 17, nor to give to holders

---

[7] Recently, these cases were cited with approval in *Flint* v. *Stone-Tracy Co.,* 220 U. S. 107, 165, and in *Kansas City, Fort Scott & Memphis Ry. Co.* v. *Botkin,* 240 U. S. 227, 232.

of its own bonds privileges not granted by its contract with them. As was stated by counsel for the *amici curiae*: "This allowance of a deduction of a fixed percentage, or 4 per cent of the mean of the reserve, itself points to the nature of the deduction, not as a right but as a favor. In granting this favor, in the interest of policyholders, Congress was entitled to consider the deduction already allowed for income on tax-exempt securities." [8]

There is no suggestion that, in fact, Congress discriminated against tax-exempt bonds, or against insurance companies as holders thereof.[9] In the Senate, it was

---

[8] The brief for the *amici curiae* states further: "The petitioner has neither constitutional nor statutory right to deduct from its income an amount equal to four per centum of the mean of its reserve or to deduct any percentage of its reserve funds, or to deduct any interest derived from the investment of its reserve funds [in addition to that from tax-exempt securities]. . . . Every life insurance company that has tax-exempt securities is treated exactly on the same basis. Companies that have tax-exempt securities are not entitled to a double deduction and those that have no tax-exempt securities still have reserves which they hold for the protection of their policy holders and Congress has fairly allowed a deduction of a percentage of those reserves." . . . . "This was a mere question of policy which Congress was free to adopt as it chose." . . . "What the petitioner wants, is not simply to have its constitutional right protected, and to be immune from taxation on its investment in government securities, but to get a further advantage, to which it has no constitutional right, that is, to include its tax exempt income in figuring its deduction on its reserve. It seeks not freedom from taxation, but a preferred position in calculating its reserve. What is there in the Constitution which compels Congress to give such an advantage?" . . . "The petitioner has no constitutional right to gain an advantage from its investment in tax-exempt securities beyond the fact that it is not to be deprived in whole or in part of its investment and that the investment is not to be made a subject of taxation."

[9] The amount of the United States securities outstanding on June 30, 1921, was $23,748,292,000. See Annual Report of Secretary of the Treasury for 1921, p. 680–685. This figure does not include

stated that all the life insurance companies favored the measure.[10]  There is no suggestion of a purpose in Congress to favor some companies at the expense of others. But even if the possibility of such discrimination appeared, the objection of inequality in operation (if it were applicable to federal legislation, *Brushaber* v. *Union Pacific R. R.*, 240 U. S. 1, 25; *La Belle Iron Works* v. *United States*, 256 U. S. 377, 392; *Barclay* v. *Edwards*, 267 U. S. 442, 450), would not be open here.  For there is no finding of the Court of Claims that the National Life fares less well than some other company.  See *Pullman Co.* v. *Knott*, 235 U. S. 23, 26; *Oliver Iron Co.* v. *Lord*, 262 U. S. 172, 180, 181.

I find nothing in the cases cited by the petitioner which lends support to the view that its rights have been violated.  Directly to tax the gross income from securities amounts, of course, to taxing the securities themselves. *Northwestern Mutual Life Insurance Co.* v. *Wisconsin*, 275 U. S. 136.  In *Miller* v. *Milwaukee*, 272 U. S. 713, as was stipulated, the dividends which this Court held could not be taxed by the State were directly declared from interest accruing from United States bonds.  Thus the dividends from tax-exempt bonds were taxed while those from other sources were free from the tax.  The tax challenged in *People* v. *Weaver*, 100 U. S. 539, in *Farmers & Mechanics Savings Bank* v. *Minnesota*, 232 U. S. 516, 521, and in

Federal farm loan bonds, of which $420,763,315 were outstanding October 31, 1921, *ibid.*, p. 963, or the obligations of the insular possessions and the District of Columbia, of which there were $52,970,750 outstanding on June 30, 1921.  *Ibid.*, pp. 750, 754.  The estimated total of tax-free securities, issued by States, counties, etc., outstanding January 1, 1922, was $8,142,000,000.  Memorandum of the Government Actuary, Hearings before the Committee on Ways and Means, House of Representatives, 67th Cong., 2d Sess., on Tax Exempt Securities, p. 21.

[10] See note 2.

each of the cases from the state courts cited, was a direct property tax imposed upon federal obligations.[11]

To hold that Congress may not legislate so that the tax upon an insurance company shall be the same whether it holds tax-exempt bonds or does not, would, in effect, be to read into the Constitution a provision that Congress must adapt its legislation so as to give to state securities, not merely tax exemption, but additional privileges; and to read into the contract of the United States with its own bondholders a promise that it will, so long as the bonds are outstanding, so frame its system of taxation that its tax-exempt bonds·shall, in respect to all taxes imposed, entitle the holder to greater privileges than are enjoyed by holders of taxable bonds. But no rule is better settled·than that provisions for tax exemption, constitutional or contractual, · are to be strictly construed. Compare *Tucker* v. *Ferguson,* 22 Wall. 527, 575; *Wilmington & Weldon R. R.* v. *Alsbrook,* 146 U. S. 279, 294; *Bank of Commerce* v. *Tennessee,* 161 U. S. 134, 146; *Ford* v. *Delta & Pine Land Co.,* 164 U. S. 662; *Chicago Theological Seminary* v. *Illinois,* 188 U. S. 662, 674; *People ex rel. Metropolitan Street Ry. Co.* v. *New York,* 199 U. S. 1, 36; *Jetton* v. *University of the South,* 208 U. S. 489, 499. The rule was acted upon as recently as *Millsaps College* v. *City of Jackson,* 275 U. S. 129.

---

[11] In *Packard Motor Co.* v. *Detroit,* 232 Mich. 245, 247, 248, the decision was rested expressly upon that ground. In *City of Waco* v. *Amicable Life Insurance Co.,* 248 S. W. 332 (Commission of Appeals of Texas), 230 S. W. 698, 702 (the Court of Civil Appeals), the case was rested upon the construction of the state statute. The constitutional question was treated slightly and *obiter.* In *People* v. *Board of Commissioners of Taxes,* 41 How. Pr. 459, 474 (Supreme Court of New York, at General Term, 1871), there "was no written opinion, the decision being rendered on argument." It does not appear whether it was placed on the construction of the statutes or on a constitutional ground. This is also true of *United States* v. *Ritchie,* Fed. Cas. No. 16,168.

Moreover, even if the decision of the Court on the main question be accepted as the rule of substantive law, I am unable to see how the Company can be allowed to recover anything. The provision of § 245 is that there shall be deducted from the gross income: "(2) An amount equal to the excess, if any, over the deduction specified in paragraph (1) of this subdivision, [i. e., the interest on tax-exempt securities] of 4 per centum of the mean of the reserve funds required by law." The Court has, of course, power to declare that the system of taxation established by Congress is unconstitutional. But I find no power in the Court to amend paragraph (2) of § 245 so as to allow the Company to deduct 4 per cent of its reserves, in addition to its income from tax-exempt securities. Congress was confessedly under no obligation to allow any deduction on account of the insurance reserves of any company. To expand the scope of the permitted deduction is legislation—and none the less so because the operation can be performed by striking out certain words of the act.

The power so to legislate is not conferred on this Court by § 1403 of the Act. That section declares: "That if any provision of this Act, or the application thereof to any person or circumstances, is held invalid, the remainder of the Act, and the application of such provision to other persons or circumstances, shall not be affected thereby." The limited purpose and the narrow effect of such a clause was stated by this Court in *Hill* v. *Wallace,* 259 U. S. 44, 71. It "furnishes assurance to courts that they may properly sustain separate sections or provisions of a partly invalid act without hesitation or doubt as to whether they would have been adopted, even if the legislature had been advised of the invalidity of part. But it does not give the court power to amend the act."

Even if such a clause could ever permit a court to enlarge the scope of a deduction allowed by a taxing statute, the present case would be wholly inappropriate for the

exercise of such a power. Here the asserted unconstitutionality can be cured as readily by striking out the whole of paragraph (2) as by enlarging it. Section 1403 gives no light as to which course Congress would prefer. So far as there are indications elsewhere, they would point to the former course. The new method of taxation was intended by Congress to procure additional revenue from the insurance companies. House Report, 67th Congress, 1st Session, No. 350, p. 14. And the deduction permitted by paragraph (2) was a concession which Congress need not have made. Whether, in view of these facts, a court could properly save the Act by striking out paragraph (2), or whether the alleged unconstitutionality necessarily renders invalid the whole scheme of taxation—thus leaving in force the tax on insurance companies contained in the Act of 1918,[12] there is no need to consider. Compare *Springfield Gas & Electric Co.* v. *Springfield,* 257 U. S. 66, 69; *Dorchy* v. *Kansas,* 264 U. S. 286, 290. On either view there can, in my opinion, be no recovery on the findings here.

MR. JUSTICE HOLMES and MR. JUSTICE STONE join in this dissent.

MR. JUSTICE STONE, dissenting.

While it may be conceded that the petitioner has been discriminated against, the discrimination occurs only in respect of an act of bounty. Petitioner's only complaint is that Congress has not granted it as large an exemption—purely a matter of grace—as it has accorded to others owning no tax-exempt securities.

---

[12] That tax was repealed by § 1400(a) of the Act of 1921. But section 1400(b) provides: "In the case of any tax imposed by any part of the Revenue Act of 1918 repealed by this Act, if there is a tax imposed by this Act in lieu thereof, the provision imposing such tax shall remain in force until the corresponding tax under this Act shall take effect under the provisions of this Act." 42 Stat. 227, 321.

In granting a bounty of any sort Congress had a particular purpose: the generous protection of insurance reserves in the interest of the policy holders. For that purpose an exemption of 4% of the reserves was considered sufficient. In the case of companies already entitled to an exemption of 4%, a further act of bounty was of course unnecessary to accomplish the end in view. Unless established principles require it, I do not think we should hold that Congress was powerless to act as generously as was necessary to achieve its useful purpose without granting additional and unnecessary bounties to insurance companies fortuitously in possession of tax-exempt bonds.

There is a distinction between imposing a burden and withholding a favor. By the Constitution or by contract the holders of tax-exempt securities are protected from burdens; but from neither source do they derive an affirmative claim to favors. If Congress voted to subsidize all insurance companies except those holding tax-exempt bonds, whatever other objections might be made to such a course I do not think petitioner could complain because it had not been made the recipient of a gift. For the same reason I believe that its present contention is insubstantial.

But even though the result now reached were to be deemed a logical implication of the doctrine announced in *The Collector* v. *Day,* 11 Wall. 113, that neither national nor state governments may tax the instrumentalities of the other, still, as this Court has often held, that rule may not be pressed to the logical extreme of forbidding legislation which affects only remotely or indirectly the holders of the other's securities. See *Metcalf & Eddy* v. *Mitchell,* 269 U. S. 514, 523. As Mr. Justice BRANDEIS has just pointed out, " a state inheritance or legacy tax is valid although the tax is as high when the estate transmitted consists in part of bonds of the United States as when none are held "; and this Court has sustained statutes under which " a corporation holding bonds of the United

States was obliged to pay the same amount in taxes that it would have been required to pay if it had not been a holder of United States bonds." Not all income earned in the employment of a state is exempt from federal taxation, *Metcalf & Eddy* v. *Mitchell, supra;* instrumentalities affecting indirectly or remotely the functions of one government may nevertheless be taxed by the other, *Gromer* v. *Standard Dredging Co.,* 224 U. S. 362; *Baltimore Shipbuilding Co.* v. *Baltimore,* 195 U. S. 375; *Fidelity & Deposit Co.* v. *Pennsylvania,* 240 U. S. 319.

Now, the rule which, under the decisions of this Court, has been thus narrowly limited, is extended into a new field; and the Government is forbidden to grant any benefit or immunity to a tax-payer unless it be extended in addition to the immunity already assured by reason of his possession of tax-exempt securities. Here, too, the remedy is not the cancellation of the benefits to others of which petitioner complains, but the grant to it of an added bounty which Congress has not authorized and which the Constitution, it seems to me, neither requires Congress nor permits this Court to give.

MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS join in this dissent.