WARREN STEAM PUMP COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45568.    Promulgated June 4, 1931.

*Merrill S. June, Esq.*, for the petitioner.
*Miles J. O'Connor, Esq.*, for the respondent.

586

## OPINION.

ARUNDELL: Petitioner claims that if its net losses for 1925 and 1926 are correctly determined and allowed as deductions in com-. puting 1927 income there will be no income in the latter year and consequently no deficiency.

The first claim is that a net loss was sustained in 1926 as the result of payments under the so-called Phinney contract. The error alleged with respect to the disallowance of those payments is as follows:

The respondent Commissioner in error, in computing taxable net income if any for 1927, has failed to take into account several payments made by petitioner under a so-called Phinney contract and under facts hereinafter set forth, said payments being made in 1926 and years prior thereto and creating a net loss for the year 1926 properly deductible in computing net income for 1927.

Under this alleged error we understand petitioner's contention to be that the aggregate of the payments made under the contract

from the time it was entered into in 1919 until its cancellation in 1926 should be allowed as a deduction in the latter year, the result of which will be a loss for 1926 and that such loss is a net loss.

The amount paid Phinney for services during his lifetime was deductible as an ordinary and necessary expense at that time and obviously such amount is not again deductible as a loss in a later year. If any of the amounts paid to Phinney were attributable to his agreement to place his stock in trust, such amounts constituted distributions to a stockholder and were not deductible then or at any future time. Following Phinney's death, petitioner continued to pay certain amounts to his estate, which was then the beneficial owner of the trusteed stock. Those payments were distributions to a stockholder and were not made, as claimed, for the acquisition of any asset which was lost when the payments ceased. In the case reported at 13 B. T. A. 721, involving this same taxpayer, we held that the amounts paid to the Phinney estate in the years 1921 to 1923 were not deductible either as expenses or losses. It was perhaps unnecessary to go as far as we did in that report in holding that the amounts paid were capital expenditures, but even if we so regard them in this case, we are still of the opinion that no deductible loss is shown. The termination of the contract released the petitioner from an obligation to pay annual sums to Phinney's estate and this would seem to be a benefit to petitioner rather than a loss. Moreover, as pointed out in the previous case, one of the objects of the agreement was to secure unified control of petitioner's stock, and it does not appear that by the termination of the contract there was lost to petitioner the benefits that it originally hoped to derive from such control.

The next issue—urged only in the event we hold against the petitioner on the first—is whether respondent erroneously increased income for 1925 by the amount of tax-exempt interest in determining the amount of net loss. For the year 1925 petitioner claims to have sustained a net loss of $25,709.38. This amount respondent reduced to $7,464.38 by including tax-exempt interest in gross income. For the year 1926 petitioner's net income—excluding the claimed loss under the Phinney contract and exempt income—was $8,952.88, which was more than sufficient to absorb the 1925 net loss, hence the respondent found that there was no net loss remaining from 1925 to be carried over to 1927.

The respondent's computation is based on the following provisions of the Revenue Act of 1926:

Sec. 206. (a) As used in this section the term "net loss" means the excess of the deductions allowed by section 214 or 234 over the gross income, with the following exceptions and limitations:

     \*       \*       \*       \*       \*       \*       \*

(5) There shall be included in computing gross income the amount of interest received free from tax under this title * * *.

The same provisions appear in the Revenue Act of 1924, and similar provisions are contained in the Revenue Acts of 1918 and 1921. The propriety of including nontaxable interest in income in determining net losses under the 1921 Act was before us in *Samuel G. Adams et al.*, 19 B. T. A. 781, and *Orr & Sembower, Inc.*, 20 B. T. A. 605, in both of which cases we sustained the respondent in his use of the method followed in this case.

Petitioner contends that the quoted provision of the statute is unconstitutional and cites *National Life Insurance Co.* v. *United States*, 277 U. S. 508, as controlling. In that case the court held that section 245(a) of the Revenue Act of 1921 was unconstitutional in requiring that the deduction from gross income of 4 per cent of the mean of the reserve funds be reduced by the amount of tax-exempt interest. Since then the court has held valid sections 214(a) and 234(a) of the same revenue act, which provide that the amount of interest deductible from gross income shall be reduced by the amount of interest paid to purchase or carry securities, the income of which is tax-exempt. See *Denman* v. *Slayton*, 282 U. S. 514, and *First National Bank of Chicago* v. *United States*, 283 U. S. 142.

Taxable income as defined in the several revenue acts is determined on a basis of a twelve-month period, except in particular circumstances not necessary to discuss here. A departure from this rule was inaugurated by the so-called net loss provision of the Revenue Act of 1918, and continued in subsequent revenue acts. This provision of the several acts is not open to all taxpayers, but only those who come within its terms, and the loss to be carried forward must be measured by the terms of the statute, and not otherwise. A glance at the provisions of section 206 (a) of the Revenue Act of 1926,[1] with which we are concerned here discloses a very detailed

---

[1] Sec. 206. (a) As used in this section the term "net loss" means the excess of the deductions allowed by section 214 or 234 over the gross income, with the following exceptions and limitations:

(1) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall be allowed only to the extent of the amount of the gross income not derived from such trade or business;

(2) In the case of a taxpayer other than a corporation, deductions for capital losses otherwise allowed by law shall be allowed only to the extent of the capital gains;

(3) The deduction for depletion shall not exceed the amount which would be allowable if computed without reference to discovery value, or to paragraph (2) of subdivision (c) of section 204;

(4) The deduction provided for in paragraph (6) of subdivision (a) of section 234 of amounts received as dividends shall not be allowed;

(5) There shall be included in computing gross income the amount of interest received free from tax under this title, decreased by the amount of interest paid or accrued which is not allowed as a deduction by paragraph (2) of subdivision (a) of section 214 or by paragraph (2) of subdivision (a) of section 234.

plan of determining a loss that may be carried forward into another year. We see no reason why Congress in granting this particular boon may not limit it so that the loss to be carried forward is an actual and true loss, and not an artificial one which arises from the exclusion of certain non-taxable income.

Reviewed by the Board.

*Decision will be entered for the respondent.*