T.C. Summary Opinion 2008-121


UNITED STATES TAX COURT


TERESA M. BROWN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23720-05S.          Filed September 16, 2008.


<u>Trapper Stewart</u> and <u>Casey Carter</u> (specially recognized), for
petitioner.

<u>Fred E. Green, Jr.</u>, for respondent.


SWIFT, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court, and
this opinion shall not be treated as precedent for any other
case.

The issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(f) with respect to Federal income tax liability for the year 2000.

Unless otherwise indicated, all section references are to the Internal Revenue Code.

## Background

Some of the facts are stipulated and are so found.

At the time the petition was filed, petitioner resided in Nevada.

Before 1991 petitioner married Stephen Brown (Brown). During the 1990s Brown and petitioner worked in real estate in Florida, California, and Hawaii.

Brown and petitioner had two children, but Brown was unstable and abusive. Brown had problems with alcohol and at times would grab or hit petitioner and threaten to take the children away from her.

In 1999 Brown and petitioner moved to Nevada for new opportunities in real estate. In 2000, the year in issue, Brown and petitioner worked in Las Vegas for two time-share companies for both of which Brown was the sales manager and petitioner was a salesperson working under Brown. As manager Brown would receive petitioner's occasional commission checks for distribution to petitioner, but Brown would not give the checks

to petitioner except to obtain her endorsement. Brown would then take petitioner's checks and cash or deposit them as he saw fit.

In September 2000 Brown and petitioner had a major altercation at their home, and police were called. When petitioner arrived at work the next morning, Brown prevented petitioner from entering the office. Brown and petitioner separated, and Brown effectively prevented petitioner from working the remainder of 2000.

In 2001 petitioner again went to work for the same real estate company but not under Brown's supervision and in a separate department and building from Brown.

In January 2002 Brown and petitioner were divorced. Pursuant to the divorce decree, Brown was obligated to pay petitioner $40,000. Brown, however, made only one $700 payment to petitioner.

As a result of Brown's abuse of and threats made to petitioner, petitioner was constantly in fear of Brown. Throughout the marriage, petitioner had no access to any of the family's financial accounts, and Brown paid all the bills.

Brown had the only key to the mailbox, and Brown would not allow petitioner to pick up or read the mail. Brown was in total control of the finances relating to the marriage and the family including income petitioner earned in her work.

As a result of the abuse she experienced, the divorce, and several serious accidents, petitioner's physical condition is poor. Petitioner takes medication for her pain and anxiety, and petitioner is not able to work.

At some point in 2001 Brown prepared or had prepared the 2000 joint Federal income tax return. It included a Schedule C, Profit or Loss From Business, on which was reported a total net income of $20,918, a zero income tax liability (after a $656 child tax credit), and a $2,956 self-employment tax liability.

Attached to the 2000 joint Federal income tax return was a Schedule SE, Self-Employment Tax, on which the reported Schedule C net income of $20,918 was allocated by Brown equally between Brown and petitioner ($10,459 each), and accordingly a self-employment tax liability was reported for Brown and for petitioner of $1,478 each.

Other than to sign, petitioner did not in any way participate in the preparation of the 2000 tax return, and petitioner was not allowed to review the 2000 return before signing it. Petitioner was not aware of the equal allocation on the 2000 tax return of the Schedule C net income between Brown and herself, and petitioner was not aware of the self-employment tax liability of $1,478 reported by Brown for her.

On approximately October 31, 2001, Brown filed the 2000 joint Federal income tax return late.

In 2004, in connection with preparing and filing her 2003 individual Federal income tax return, petitioner learned of significant unpaid joint Federal income taxes for 1991, 1997, 1998, and 2000 that Brown had never paid and about which Brown had never informed her.

On October 28, 2004, petitioner filed with respondent a Form 8857, Request for Innocent Spouse Relief, requesting relief from joint liability for the outstanding Federal income taxes for 1991, 1997, 1998, and 2000. Under section 6015, respondent granted in full petitioner's request for relief from joint Federal income tax liability for 1991, 1997, and 1998.

For 2000 respondent granted petitioner relief from one-half of the $2,956 reported self-employment taxes shown on the return on the ground that half was attributable to Brown. Respondent, however, determined that the other half of the reported $2,956 self-employment taxes was attributable to petitioner's taxable income and that relief therefrom was not warranted.

At the time of trial Brown continued to live in the home he had shared with petitioner before their divorce, and petitioner lived in a motel and had custody of their daughter.

Petitioner's father has been giving petitioner $500 per month. Because of petitioner's medical condition, petitioner is not able to work. At the time of trial, petitioner was seeking Social Security disability benefits.

## Discussion

Generally, taxpayers filing joint Federal income tax returns are jointly liable for taxes reported due thereon. Sec. 6013(d)(3). However, equitable relief from joint liability for Federal income taxes may be available to a spouse when it would be inequitable to hold the spouse liable. Sec. 6015(f)(1).

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. 296, 297, sets forth seven threshold conditions which a taxpayer seeking equitable relief from joint liability under section 6015(f) is required to satisfy. With regard to half of the Schedule C reported income that Brown on the 2000 tax return attributed to petitioner and with respect to which respondent has denied petitioner relief from self-employment tax liability, respondent argues that one of the seven threshold conditions is not satisfied; namely, that the income in question was "attributable to" petitioner. See id. sec. 4.01(1) through (7), 2003-2 C.B. at 297-298.[1]

Petitioner challenges respondent's determination on the ground that the $10,459 in question was earned by Brown, not by

---

[1]In describing, in part, the threshold condition in question, Rev. Proc. 2003-61, sec. 4.01(7), 2003-2 C.B. 296, 297, states: "The income tax liability from which the requesting spouse seeks relief is attributable to an item of the [other] individual with whom the requesting spouse filed the joint return". The exceptions are: (a) Attribution solely due to the operation of community property law; (b) nominal ownership; (c) misappropriation of funds; and (d) abuse.

her, and that the $10,459 therefore was not attributable to her. Petitioner also challenges respondent's determination on the ground that petitioner qualifies for the abuse exception to this seventh threshold condition. See id. sec. 4.01(7)(d), 2003-2 C.B. at 298. We agree with petitioner as to the abuse exception.

Regardless of whether the $10,459 was attributable to petitioner, on the basis of the record before us and on petitioner's credible testimony at trial we conclude that petitioner qualifies for the exception under Rev. Proc. 2003-61, sec. 4.01(7)(d).[2] Brown's control and abuse of petitioner was extensive and establishes that petitioner for fear of Brown's retaliation and further abuse did not challenge Brown's preparation of the 2000 Federal income tax return, Brown's allocation of the Schedule C income reported thereon equally between himself and petitioner, or Brown's allocation of the self-employment taxes between himself and petitioner.

Respondent also determined that petitioner knew or had reason to know that Brown would not pay the self-employment taxes shown due on petitioner and Brown's joint return. See Rev. Proc. 2003-61, sec. 4.02(1)(b), 2003-2 C.B. at 298. Respondent argues that because of their difficult relationship and because

---

[2]Rev. Proc. 2003-61, sec. 4.01(7)(d), 2003-2 C.B. at 298, allows the Commissioner to grant equitable relief even though the underpayment in question may be attributable in full or in part to an item of income of the requesting spouse.

petitioner, at the time she signed the 2000 joint return, knew of the financial troubles of the marriage, petitioner should have anticipated that Brown would fail to pay the reported self-employment taxes.

We disagree. Brown kept petitioner entirely in the dark about the family's finances, including the payment or nonpayment of taxes. Brown did not allow petitioner to review any of their financial records or tax returns. Brown exercised so much control over the finances for such an extended period of time that petitioner had essentially no knowledge of any of the family's finances or tax liabilities. We conclude that petitioner has established that it was reasonable for her to believe Brown would pay the self-employment taxes reported on the joint 2000 Federal income tax return.

Respondent also determined that petitioner would not suffer economic hardship if she were denied relief from liability for the $1,478 of 2000 self-employment taxes. See id. sec. 4.02(1)(c), 2003-2 C.B. at 298. Economic hardship under Rev. Proc. 2003-61, sec. 4.02(1)(c), exists if satisfaction of the liability in whole or in part would result in petitioner's inability to pay reasonable living expenses. Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.

As noted, petitioner is living from day to day, being assisted by her father and friends. Petitioner's medical

condition prevents her from working and earning any income. We conclude that petitioner's medical condition makes it unlikely that petitioner will be able to find employment.

The fact that petitioner's father provides some assistance to petitioner is not particularly relevant to our economic hardship analysis. We conclude that denial of petitioner's request from relief would cause petitioner economic hardship.

Because we conclude that it would be inequitable to deny petitioner relief under Rev. Proc. 2003-61, sec. 4.02, we need not reach the issue of equitable relief under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.