T.C. Summary Opinion 2005-55

UNITED STATES TAX COURT

ANGELA RAE ZACHRY, Petitioner, and CURTIS CARLIN, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 317-04S.                    Filed May 5, 2005.

Angela Rae Zachry, pro se.

Curtis Carlin, pro se.

<u>Monica D. Armstrong</u>, for respondent.


COUVILLION, <u>Special Trial Judge</u>: This case was heard
pursuant to section 7463 in effect when the petition was filed.[1]
The decision to be entered is not reviewable by any other court,
and this opinion should not be cited as authority. Petitioner

_____

[1]Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the year at issue,
and all Rule references are to the Tax Court Rules of Practice
and Procedure.

seeks a review under section 6330(d) of respondent's decision to proceed with collection of petitioner's portion of a Federal income tax liability for the 1996 tax year.

Some of the facts were stipulated. Those facts, with the exhibits annexed thereto, are so found and made part hereof. Petitioner's legal residence at the time the petition was filed was Douglasville, Georgia.

Petitioner and her former husband, Curtis Carlin (intervenor), were married in December 1995. At that time, petitioner was 20 and intervenor was 29. They immediately settled in Florida, where they rented a house. Petitioner has a high school education and worked as a hair stylist, and intervenor worked for both Show Tech Support, Inc., and ACC Productions, Inc., managing props on motion picture sets. In May 1996, petitioner gave birth to a son. As a result, petitioner worked only intermittently throughout 1996.

Approximately 6 weeks before petitioner's son was born, intervenor's mother (Ms. Carlin) died. Intervenor was the sole descendant and inherited Ms. Carlin's estate. Shortly thereafter, petitioner moved to Georgia with her parents, and intervenor remained in Florida to settle his mother's affairs. Intervenor later joined petitioner in Georgia, where the couple subsequently purchased land.

During the latter part of 1996, intervenor received $68,648 in a distribution from Ms. Carlin's section 401(k) retirement account. Intervenor also received proceeds from the sale of Ms. Carlin's home in Florida.

Petitioner and intervenor filed their 1996 joint Federal tax return timely. On the return, they reported total income of $42,926 but included only $5,220 in gross pension income and $220 in taxable pension income. Respondent issued a Notice Proposing Changes (CP-2000) on September 26, 1998, to petitioner and intervenor stating: "information reported on their return did not match what was reported by their employers, banks, and/or other payers." Intervenor did not respond to this notice. On March 8, 1999, petitioner filed Form 8857, Request for Innocent Spouse Relief. It was subsequently denied.

On April 12, 2000, respondent issued a notice of deficiency to petitioner and intervenor for their 1996 tax. Respondent determined petitioner and intervenor underreported the wages from Show Tech Support, Inc., and pension income paid to intervenor and failed to report nonemployee compensation paid to intervenor from ACC Productions, Inc. The entire deficiency was based on the payments made to intervenor, as noted on the various Forms 1099. A timely petition was filed in this Court in the names of both intervenor and petitioner. Because the petition was

imperfect, and an amended petition was never filed, as ordered by the Court, the case was dismissed for lack of jurisdiction.[2]

Petitioner and intervenor separated during 1998. On May 1, 2000, their divorce became final. In the divorce agreement, intervenor acknowledged receiving $191,000 from his mother's estate, of which only $12,000 remained. Petitioner and intervenor agreed that petitioner would be responsible for one-third of the tax liability while intervenor would be responsible for the remaining two-thirds.

On December 4, 2002, respondent issued a Final Notice of Intent to Levy to petitioner. On December 19, 2002, respondent filed a Notice of Federal Tax Lien against petitioner. Respondent then issued the Notice of Federal Tax Lien to petitioner on December 24, 2002. Petitioner thereafter filed a timely Form 12153, Request for a Collection Due Process Hearing, on December 19, 2002. Petitioner raised the innocent spouse issue as her sole defense at the subsequent hearing before an IRS settlement officer. On December 16, 2003, the settlement officer issued a Notice of Determination sustaining the lien and levy and denying petitioner's request for relief from joint liability.

---

[2]The parties stipulated that "Petitioner did not petition the Tax Court for a redetermination for the deficiency asserted by respondent for the taxable year 1996." Petitioner did in fact petition this Court; however, since the petition was dismissed for lack of jurisdiction, the stipulation is technically correct. Petitioner, moreover, does not challenge the underlying deficiency but only seeks relief from joint liability.

Petitioner filed a timely petition in this Court appealing the Appeals officer's decision. On March 31, 2004, intervenor filed a timely Notice of Intervention.

The Court must decide whether petitioner is entitled to relief from joint liability in lieu of the Appeals officer's determination. Where the underlying tax liability is properly at issue before the Appeals officer, this Court reviews that issue on a de novo basis. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). However, where the underlying tax liability is not at issue, as in this case, this Court reviews the determination on the basis of whether there was an abuse of discretion by respondent. Sego v. Commissioner, 114 T.C. 604 (2000). An abuse of discretion is defined as any action that is unreasonable, arbitrary or capricious, clearly unlawful, or lacking sound basis in law, taking into account all the facts and circumstances. E.g., Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979); Swanson v. Commissioner, 121 T.C. 111, 119 (2003).

Married persons who file a joint Federal income tax return generally are jointly and severally liable for the payment of the tax shown on the return or found to be owing. Sec. 6013(d)(3); Cheshire v. Commissioner, 115 T.C. 183, 188 (2000), affd. 282 F.3d 326 (5th Cir. 2002). Furthermore, agreements between spouses with respect to how liability is shared on tax deficiencies are not binding on this Court. Pesch v.

<u>Commissioner</u>, 78 T.C. 100, 129 (1982) (citing <u>Bruner v.</u>
<u>Commissioner</u>, 39 T.C. 534, 537 (1962); <u>Neeman v. Commissioner</u>, 13
T.C. 397, 399 (1949), affd. per curiam 200 F.2d 560 (2d Cir.
1952); <u>Casey v. Commissioner</u>, 12 T.C. 224, 227 (1949); <u>Bonner v.</u>
<u>Commissioner</u>, T.C. Memo. 1979-435; <u>Ballenger v. Commissioner</u>,
T.C. Memo. 1955-171).

Relief from joint and several liability is available to
certain taxpayers under section 6015.  There are three avenues
for relief available under this section--section 6015(b), (c),
(f).  In reaching the decision at the administrative level in
this case, the Appeals officer denied relief under subsections
(b) and (c) finding that petitioner had actual knowledge.  The
Appeals officer also denied relief under subsection (f) noting:

> While no formal request under 6015(f) was
> received during the CDP process, the taxpayer's
> statements all concerned the inequity of holding her
> liable and her inability to pay.  The taxpayer
> provided no financial information so Appeals could
> make no determination as to the hardship provisions
> of 6015(f) * * *.  Appeals considered the taxpayer's
> statements about the inequity of holding her liable,
> but her bare statements alone were insufficient to
> overcome the prior denial of relief.  Both the
> taxpayer and her POA were given time to supply
> additional supporting documentation and chose not to
> do so.

The Appeals officer sustained the levy action.  This Court will
reverse the Appeals officer's finding only if petitioner
establishes there was an abuse of discretion.

The Court first examines the Appeals officer's determination that petitioner had actual knowledge of the unreported pension distribution.  If petitioner had actual knowledge, she cannot be afforded relief under section 6015(b) or (c).  Under section 6015(b), the taxpayer must not have known or had any reason to know that the other spouse understated that spouse's tax liability on the return.  Sec. 6015(b)(1)(C), (2).  Relief under section 6015(c) is not available to a taxpayer if it is shown that the taxpayer had actual knowledge when signing the return of any "item" giving rise to a deficiency.  Sec. 6015(c)(3)(C).[3]

The Appeals officer met with petitioner before issuing a notice of determination.  Because the Appeals officer was unable to retrieve the case file of petitioner's settlement hearing resulting from her March 1999 petition for relief from joint liability, petitioner was afforded time to provide information to the Appeals officer to support her claim.  In the notice of determination, the Appeals officer stated:

---

[3]Although, generally, the burden is on the Commissioner to prove that a taxpayer had "actual knowledge" under sec. 6015(c), the Court is evaluating this case under an abuse of discretion standard; therefore, the issue before the Court is not whether petitioner had actual knowledge as to the pension distribution, but whether the Appeals officer abused her discretion in determining such.  As a result, petitioner need not prove she had no actual knowledge; rather, petitioner need only show the Appeals officer abused her discretion in determining petitioner had actual knowledge and thereby denying relief.

> The only information received was a statement documenting * * * [petitioner's] testimony at the conference and some child support checks issued by her ex-husband in 2000. Subsequent discussions with the taxpayer and her Power of Attorney did not result in any further documentation. The taxpayer has raised no other collection alternatives. The decision on the appropriateness of the proposed collection action was made based on the information in the case file, the information available in the master file account, the assessment information, and on information submitted by the taxpayer. No financial information was provided to allow a decision based on financial circumstances.

Because petitioner presented no additional information to establish she had no knowledge of intervenor's underreporting of the pension distribution, the Appeals officer found no basis for overturning the denial of the original request for relief on the basis of knowledge.

Petitioner asserts she did not know of the 1996 tax understatement attributable to the distribution to intervenor of his deceased mother's pension because she was told that intervenor's sole inheritance was from the sale of Ms. Carlin's residence. Petitioner readily admitted she was aware intervenor received approximately $200,000 after Ms. Carlin passed away; however, petitioner contended she believed the entire amount came from the sale of Ms. Carlin's residence and had no reason to believe otherwise. The knowledge standard for purposes of section 6015(c)(3)(C) is an actual and clear awareness, as opposed to reason to know, of the existence of an item that gives rise to the deficiency. Cheshire v. Commissioner, supra at 195.

Petitioner offered extensive testimony regarding her lack of knowledge about the source of intervenor's inheritance; however, intervenor also offered extensive testimony that petitioner knew the exact nature of his inheritance. As a result of the conflicting testimony, and the lack of documentation supporting either testimony, the Court finds neither party's testimony credible. To determine whether petitioner had actual knowledge of the pension distribution to intervenor, the Court looks beyond the testimony of petitioner and intervenor and relies principally on the stipulation of facts and the admitted evidence.

Petitioner and intervenor filed their 1996 joint Federal income tax return with the assistance of a tax preparer at H&R Block. On Line 16(a) of Form 1040, U.S. Individual Income Tax Return, the tax return listed $5,220 as "Gross Pension/Annuity Amount" and then listed $220 as the "Taxable Pension/Annuity Amount". Regardless of whether petitioner was present during the return preparation to discuss the pension distribution, she nonetheless willingly signed the return, and a simple review of the return would have alerted petitioner to the existence of a pension distribution.[4] Petitioner contends she signed the return

---

[4]Petitioner and intervenor's testimony as to whether petitioner was present while their tax return was being prepared is contradictory. Petitioner testified she was at work while intervenor met with the H&R Block representative; however, intervenor testified she was present the entire time the return was being prepared.

without reviewing it. When questioned by counsel for respondent whether she had an opportunity to review the return, petitioner responded she could have but thought there was no reason to. Petitioner offered no evidence, other than her testimony, to substantiate her claim of lack of knowledge. Her testimony alone is not enough to show that the Appeals officer abused her discretion in finding petitioner had actual knowledge of the pension distribution. Therefore, respondent's denial of relief under section 6015(b) and (c) due to petitioner's actual knowledge of the pension distribution is sustained.

Lastly, the Court reviews the Appeals officer's denial of relief under section 6015(f). Section 6015(f) more broadly confers on the Secretary discretion to grant equitable relief for taxpayers who otherwise do not qualify for relief under section 6015(b) or (c). As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296, that the Commissioner will consider in determining whether an individual qualifies for relief under section 6015(f).[5] The taxpayer may present evidence of factors like abuse, economic hardship, or lack of knowledge to show it would be inequitable

---

[5]Rev. Proc. 2003-61, 2003-2 C.B. 296, not Rev. Proc. 2000-15, 2001 C.B. 447, applies to this case because Rev. Proc. 2003-61 supersedes Rev. Proc. 2000-15 for requests still pending on Nov. 1, 2003, for which no preliminary determination letter had been issued as of Nov. 1, 2003. The Appeals officer issued petitioner's notice of determination on Dec. 16, 2003.

for the taxpayer to be held liable for a portion of the understatement.  As previously discussed, other than the blanket statement that "it would be inequitable" to make her pay, petitioner submitted no evidence to the Appeals officer to support her claim for relief under section 6015(f).

Petitioner bears a heavy burden of proof and respondent's position deserves the Court's deference.  This Court does not interfere unless respondent's determination is arbitrary, capricious, clearly unlawful, or without sound basis in fact or law.  Ewing v. Commissioner, 122 T.C. 32, 39 (2004).  Petitioner presented no additional evidence at trial to support her claim for relief under section 6015(f); therefore, the Court finds there was no abuse of discretion by the Appeals officer in denying her claim for equitable relief under section 6015(f).

Petitioner received an appropriate hearing for purposes of section 6330(b)(1).  Day v. Commissioner, T.C. Memo. 2004-30; Leineweber v. Commissioner, T.C. Memo. 2004-17; sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs.  Respondent properly verified that the requirements of applicable law and administrative procedures were met and balanced the need for efficient collection of taxes with the legitimate concern of petitioner that the collection action be no more intrusive than necessary.  On this record, the Court holds that there was no

abuse of discretion in sustaining the notice of intent to levy. Respondent, therefore, is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>for respondent.</u>