T.C. Summary Opinion 2009-170

UNITED STATES TAX COURT

ARIANEL TORRES, Petitioner, AND
FRANZ HURTADO, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3759-06S.                    Filed November 23, 2009.

Arianel Torres, pro se.

Franz Hurtado, pro se.

<u>Daniel W. Layton</u>, for respondent.

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463.[1]  Pursuant to section
7463(b), the decision to be entered is not reviewable by any

_____

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended, in effect for the
relevant period.

other court, and this opinion shall not be cited as precedent for any other case.

In a final notice of determination dated December 1, 2005, respondent denied petitioner's claim for section 6015 relief with respect to the joint and several liability arising from the 2000 joint Federal income tax return filed by petitioner and intervenor (the 2000 joint return).  According to that notice, relief was denied because petitioner was not eligible for section 6015(b) or (c) relief, and she did not qualify for equitable relief under section 6015(f).  Intervenor opposes allowing petitioner any section 6015 relief.  Because the tax liability from which petitioner seeks relief results from an underpayment of the tax liability shown on the 2000 joint return, petitioner does not qualify for relief under section 6015(b) or (c).  That being so, we further consider and discuss only whether petitioner is entitled to relief under section 6015(f).

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner and intervenor resided at separate addresses in California.

Petitioner and intervenor were married in August 1996, they separated in August 2001, and were divorced in May 2003.  They

have one child. During the first 3 years of their marriage petitioner lived in Mexico and intervenor lived in California. They filed joint Federal income tax returns for taxable years 1996 through 2000.

In 1996 petitioner purchased a parcel of land in Mexico. She paid for it in installments from income earned while employed in Mexico. Petitioner made the final payment sometime during 1998.

In 1999 petitioner purchased a condominium in Mexico. At the time of this purchase petitioner was unemployed. Some of the mortgage payments for the condominium were made through withdrawals from intervenor's bank account, to which petitioner had limited access.

In December 1999 petitioner moved from her condominium in Mexico to her mother's home in California. Shortly thereafter, in February 2000, petitioner moved in with intervenor. At that time petitioner was unemployed and intervenor worked for Yahoo!, Inc.

In connection with their divorce, petitioner and intervenor entered into a "Marital Settlement Agreement" (the agreement), effective as of April 1, 2003, which was incorporated into the divorce decree. The agreement addresses Federal income tax

notices and audits but does not specify which spouse would be responsible for any unpaid income tax for 2000.

On April 14, 2003, petitioner and intervenor signed and filed the 2000 joint return after respondent notified them that a substitute for return was being prepared for that year. The 2000 joint return shows income of $71,684[2] and an income tax liability of $9,459, of which $6,243 was unpaid. Some of the income shown on the return was used to purchase a used car for petitioner, some was used to make a loan to petitioner's mother, some was used to make mortgage payments on petitioner's condominium in Mexico, and some was available to and used for unspecified purposes by petitioner's father.

In August 2004 petitioner timely submitted a Form 8857, Request for Innocent Spouse Relief (request for relief), and Form 12510, Questionnaire for Requesting Spouse (questionnaire). Petitioner stated on her questionnaire that she did not sign the 2000 joint return and that she did not have access to intervenor's bank account. Both allegations are inconsistent with testimony and other evidence presented at trial, and petitioner concedes that she was mistaken on her questionnaire.

In the final notice of determination respondent denied petitioner's request for relief on the grounds that she:

---

[2]Intervenor prepared the 2000 joint return. All of the income reported on the return is attributable to him.

(1) Failed to establish a reasonable belief the tax liability reported on the return would be paid; (2) failed to establish that she would suffer economic hardship if not relieved of the tax liability; and (3) benefited significantly from the unpaid tax liability.

At the time petitioner filed her petition she was a student at San Jose State and employed full time as a diet clerk at a hospital in San Jose. Her education was financed in part through student loans.

### Discussion

I.   Introduction

In general, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election for a year, each spouse is jointly and severally liable for the entire Federal income tax liability assessed for that year, whether as reported on the joint return or subsequently determined to be due. Sec. 6013(d)(3); see sec. 1.6013-4(b), Income Tax Regs. Subject to various conditions and in a variety of ways set forth in section 6015, an individual who has made a joint return with his or her spouse for a year may seek relief from the joint and several liability arising from that joint return.

A taxpayer who does not qualify for relief under section 6015(b) or (c) may be relieved from joint and several liability

pursuant to section 6015(f) if, taking into account all the facts and circumstances, it would be inequitable to hold the taxpayer liable for any unpaid tax or deficiency.

## II.  Section 6015(f) Relief

We review, de novo, petitioner's entitlement to relief under section 6015(f).  See Porter v. Commissioner, 132 T.C. ___ (2009).

The Commissioner has issued revenue procedures listing factors to be considered in determining whether relief should be granted under section 6015(f).  Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447.[3]

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, sets forth threshold conditions that individuals seeking relief under section 6015(f) must satisfy.  Respondent concedes that petitioner satisfies the threshold conditions.

Where the requesting spouse satisfies the threshold requirements of Rev. Proc. 2003-61, sec. 4.01, then Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, sets forth circumstances in which relief will ordinarily be granted under section 6015(f) with respect to an underpayment of a properly reported liability. To qualify for relief under Rev. Proc. 2003-61, sec. 4.02(1),

---

[3]The guidelines set forth in Rev. Proc. 2003-61, 2003-2 C.B. 296, are effective for requests for relief filed, as in this case, on or after Nov. 1, 2003.  Id. sec. 7, 2003-2 C.B. at 299.

2003-2 C.B. at 298, the spouse seeking relief must: (1) No longer be married to, be legally separated from, or not have been a member of the same household of the other spouse at any time during the 12-month period ending on the date of the request for relief; (2) have had no knowledge or reason to know when the spouse seeking relief signed the return that the other spouse would not pay the tax liability; and (3) suffer economic hardship if relief is not granted. The parties dispute whether petitioner would suffer economic hardship if her request for relief were not granted.

Generally, economic hardship exists if collection of the tax liability will cause the spouse seeking relief to be unable to pay his or her reasonable basic living expenses. Butner v. Commissioner, T.C. Memo. 2007-136. The following nonexclusive factors to be considered in determining whether the spouse seeking relief can pay reasonable basic living expenses are set forth in section 301.6343-1(b)(4), Proced. & Admin. Regs.: (1) The age, employment status and history, ability to earn, and number of dependents of the spouse seeking relief; (2) an amount reasonably necessary for food, clothing, housing, medical expenses, transportation, current tax payments, and expenses necessary to the production of income for the spouse seeking relief; (3) the cost of living in the geographic area of the spouse seeking relief; (4) the amount of property available to

satisfy the expenses of the spouse seeking relief; (5) any extraordinary circumstances; e.g., special education expenses, a medical catastrophe, or a natural disaster; and (6) any other factor bearing on economic hardship.

Petitioner contends that she is unable to pay the tax liability because her monthly income barely covers her monthly expenses.[4]  She testified that she had accrued approximately $50,000 in student loans and was financially responsible for her son.  Petitioner offered no documentation to substantiate her monthly income and/or expenses.  Furthermore, at trial she claimed an additional $300 in monthly expenses that was not claimed on her questionnaire.

The lack of receipts, bills, or other statements substantiating petitioner's claimed expenses makes it difficult to determine the types of expenses accounted for, whether the expenses were reasonable, and whether her estimates of those expenditures are, in fact, accurate.

A copy of a schedule of petitioner's assets and debts submitted to the Superior Court of California, County of Santa Clara, was introduced into evidence in this case.  That schedule shows $17,200 in assets, encumbered by $8,800.  Included in the list of assets is the parcel of land she purchased in Mexico in

---

[4]Petitioner testified that her monthly income of $1,600 equaled her monthly expenses.

1996 ($4,000), the condominium she purchased in Mexico in 1999 ($9,000), and the used car she purchased in 2000 ($3,500). Petitioner also claimed $43,050 in debts on that schedule, including student loans ($27,000) and credit cards ($15,300). According to the schedule, petitioner pays $563 a month towards the satisfaction of her debts.

Considering the foregoing, and taking into account the factors set forth in section 301.6343-1(b)(4), Proced. & Admin. Regs., we conclude that the satisfaction of the tax liability in issue will not cause petitioner to be unable to pay basic living expenses. Therefore, we conclude that petitioner would not suffer economic hardship if relief were not granted.

Where, as here, a spouse fails to qualify under Rev. Proc. 2003-61, sec. 4.02, relief may be granted under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298. A nonexhaustive list of factors to be considered when determining whether to grant equitable relief under section 6015(f) is contained in Rev. Proc. 2003-61, sec. 4.03. Those factors are: (1) Marital status; (2) economic hardship; (3) whether the spouse seeking relief knew or had reason to know that the other spouse would not pay the income tax liability; (4) the other spouse's legal obligation to pay the tax liability; (5) whether the spouse seeking relief obtained a significant benefit from the nonpayment of the tax liability; and (6) whether the spouse seeking relief complied with Federal

income tax laws.  We address below the application of the foregoing factors to the facts and circumstances of the instant case.

A. <u>Marital Status</u>

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(i), 2003-2 C.B. at 298, consideration is given to whether the spouse seeking relief is separated or divorced from his or her spouse.  Petitioner and intervenor were separated in August 2001 and were divorced in May 2003.  Petitioner filed her claim for relief on August 28, 2004.  The marital status factor favors relief.

B. <u>Economic Hardship</u>

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), 2003-2 C.B. at 298, consideration is given to whether the spouse seeking relief would be unable to pay reasonable basic living expenses if relief were not granted.  As previously discussed, petitioner has failed to establish that she would be unable to pay reasonable basic living expenses if section 6015(f) relief were not granted.  This factor weighs against relief.

C. <u>Knowledge or Reason To Know</u>

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii), 2003-2 C.B. at 298, consideration is given to whether the spouse seeking relief knew or had reason to know that the other spouse would not pay the liability.  Respondent concedes that petitioner was

unaware of any tax liability due at the time she signed the 2000 joint return.  This factor also favors relief.

D. Legal Obligation of Other Spouse

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv), 2003-2 C.B. at 298, consideration is given to whether the other spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or an agreement.   The agreement is silent with regard to whether petitioner or intervenor is responsible for the 2000 income tax liability.  Accordingly, this factor is neutral.  See Washington v. Commissioner, 120 T.C. 137, 148-149 (2003).

E. Significant Benefit

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(v), 2003-2 C.B. at 299, consideration is given to whether the spouse seeking relief significantly benefited (beyond normal support) from the unpaid income tax liability.  If so, the significant benefit factor weighs against granting equitable relief.

It is clear that some of the income that gave rise to the unpaid 2000 tax liability inured to the benefit of petitioner. At least some portion of the unpaid liability was used to make a loan to petitioner's mother, some was used to purchase a used car for petitioner, and some was used by petitioner's father. Furthermore it appears that at least some portion of the income reported on the 2000 joint return was used by petitioner to pay

the mortgage on her condominium in Mexico and her school tuition. The facts and circumstances presented strongly suggest that petitioner received a significant benefit from the failure to pay the tax. Accordingly, this factor also weighs against relief.

F. <u>Petitioner's Compliance With Federal Income Tax Laws</u>

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi), 2003-2 C.B. at 299, consideration is given to whether the spouse seeking relief is in compliance with her income tax obligations. Respondent concedes that petitioner is in compliance with her Federal income tax obligations in the taxable years following the taxable year in issue, and therefore, the compliance factor favors relief. See <u>Harris v. Commissioner</u>, T.C. Memo. 2009-26.

Three factors weigh in favor of relief, two factors weigh against relief, and three factors are neutral. Although the decision is close, the significant benefit factor and the economic hardship factor constrain us to conclude that it would not be inequitable to hold petitioner liable for the income tax liability arising from the 2000 joint return. Therefore, with respect to that year, petitioner is not entitled to section 6015(f) relief.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.