T.C. Summary Opinion 2011-135

UNITED STATES TAX COURT

RACHEL N. JONES, f.k.a. RACHEL N. PACE, Petitioner, AND
JOHN PACE, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8553-10S.              Filed December 5, 2011.

<u>Jessica C. Piedra</u>, for petitioner.

John Pace, pro se.

<u>Evan H. Kaploe</u>, for respondent.

WELLS, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.[1]  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court, and

---

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended.

this opinion shall not be treated as precedent for any other case.

In a final notice of determination dated January 21, 2010, respondent denied petitioner's claim for section 6015 relief from joint and several liability arising from the 2007 joint Federal income tax return filed by petitioner and intervenor. Intervenor opposes allowing petitioner any section 6015 relief. We must decide whether petitioner is entitled to relief from joint and several liability under section 6015.

## Background

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of facts are incorporated in this opinion by reference and are found accordingly. At the time the petition was filed, petitioner and intervenor were both residents of Missouri.

Petitioner and intervenor (sometimes referred to as the couple) were married during 2003. Petitioner was a schoolteacher, and intervenor was employed as a car salesman. Intervenor also operated a lawn mowing business in his spare time. The couple had joint checking and savings accounts into which petitioner occasionally made deposits and on which she wrote checks. For the most part, intervenor maintained control over the couple's finances. He instructed petitioner how much she should spend when she went shopping, and he paid all of the

couple's bills and checked the balances in their accounts. Intervenor normally used the Internet to access the couple's bank accounts, and he refused to give petitioner the passwords to the accounts.

Intervenor spent a lot of time at work and frequently went out with his friends in the evenings. Intervenor's not always informing petitioner of his whereabouts led to a number of arguments. During some of those arguments intervenor would yell and curse at petitioner. On two occasions petitioner initiated physical contact with intervenor during these arguments by covering his mouth with her hand. On one of those occasions intervenor responded by putting his hand on petitioner's throat and pointing at her face while he screamed at her not to touch him again. However, intervenor and petitioner are in agreement that intervenor did not attempt to choke petitioner and that intervenor never struck petitioner or used other physical violence during their marriage.

The couple had apparently accumulated some debt. Both petitioner and intervenor had school loans, which they consolidated. They also had credit card debt. Additionally, intervenor's father had used intervenor's Social Security number to apply in intervenor's name for a credit card which he apparently used without intervenor's permission.

At some point during 2007 intervenor decided that the couple should make a hardship withdrawal from his section 401(k) retirement plan account (401(k) plan) of $22,000. The 401(k) plan was funded by contributions from intervenor with matching contributions from his employer. Petitioner understood that they were making the withdrawal to pay some of their debts. The 401(k) plan was in intervenor's name; but because petitioner was a beneficiary, she also had to sign the request for the hardship withdrawal. At intervenor's urging, petitioner did sign the request, and the couple withdrew $22,000 from the 401(k) plan. The couple used that money to make student loan payments, to pay some of their credit card debt, to pay some of the debt intervenor's father had accumulated in intervenor's name, and to do some renovations on their home.

As a result of the hardship withdrawal, the couple owed income tax on the amount withdrawn, and they owed a 10-percent additional tax for early withdrawal pursuant to section 72(t). The couple timely filed a joint Form 1040, U.S. Individual Income Tax Return, for their 2007 tax year. On their joint return, they reported income tax due of $8,136. That tax liability was largely due to the taxes associated with the couple's withdrawal of funds from intervenor's 401(k) plan. The couple did not pay the tax due. Before filing their joint return, the couple had

agreed that intervenor would be responsible for the tax liability.

During 2008, the couple went through divorce proceedings, and they were officially divorced on November 17, 2008. According to the terms of their marital settlement and joint legal custody agreement (marital settlement agreement), intervenor agreed to pay the couple's tax liability.

However, the Internal Revenue Service (IRS) subsequently offset petitioner's 2008 tax refund of $3,428 against the couple's 2007 joint liability. Because the IRS used petitioner's refund to pay part of the liability intervenor had assumed under the terms of the marital settlement agreement, the couple agreed that intervenor would reimburse petitioner by paying some of her bills. Intervenor is currently paying off petitioner's undergraduate student loans. Intervenor is not obligated to pay off petitioner's undergraduate student loans under the terms of the marital settlement agreement. Intervenor has entered into an installment agreement with the IRS under which he is currently paying off the couple's tax liability.

Since her divorce, petitioner has remarried. Petitioner is not currently experiencing any economic hardship, nor is she suffering from any mental or physical health problems.

Petitioner timely filed a Form 8857, Request for Innocent Spouse Relief, on April 16, 2009. On January 21, 2010, the IRS

issued petitioner a final Appeals determination, which denied her request for relief from joint and several liability.  Petitioner timely filed her petition in this Court.

## Discussion

In general, spouses filing a joint return are jointly and severally liable for the accuracy of the return and for the full tax liability.  Sec. 6013(d)(3); see also sec. 1.6013-4(b), Income Tax Regs.  However, pursuant to section 6015, a taxpayer may be relieved from joint and several liability in certain circumstances.

A taxpayer may be relieved from joint and several liability pursuant to section 6015(f) if, taking into account all the facts and circumstances, it would be inequitable to hold the taxpayer liable for any unpaid tax or deficiency and the taxpayer does not qualify for relief under section 6015(b) or (c).[2]  We have jurisdiction to review respondent's denial of petitioner's request for equitable relief under section 6015(f).  See sec. 6015(e)(1).  We apply a de novo standard of review and a de novo scope of review.  Porter v. Commissioner, 132 T.C. 203, 210 (2009); Porter v. Commissioner, 130 T.C. 115 (2008).  The

---

[2]Relief pursuant to sec. 6015(b) or (c) is premised on the existence of a deficiency or an understatement of tax.  Sec. 6015(b)(1)(B), (c)(1); Block v. Commissioner, 120 T.C. 62, 65-66 (2003).  The instant case involves an underpayment of a properly reported liability.  Therefore, as the parties agree, relief under sec. 6015(b) and (c) is not available to petitioner.

requesting spouse bears the burden of proof.  Porter v. Commissioner, 132 T.C. at 210.

As directed by section 6015(f), the Commissioner has prescribed procedures for determining whether a taxpayer qualifies for relief from joint and several liability.  These procedures are set forth in Rev. Proc. 2003-61, 2003-2 C.B. 296. Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, lists seven conditions (threshold conditions) that must be satisfied before the Commissioner will consider a request for relief under section 6015(f).  Respondent concedes that petitioner satisfies the first six threshold conditions but contends that petitioner does not satisfy the seventh.

The seventh threshold condition requires that the income tax liability from which the requesting spouse seeks relief be attributable to an item of the nonrequesting spouse, unless one of several exceptions applies.  Rev. Proc. 2003-61, sec. 4.01. The 401(k) plan was in intervenor's name, and it was administered by his employer.  The 401(k) plan was funded with contributions from intervenor and matching contributions from his employer.  We are not persuaded by respondent's argument that the fact that petitioner, as a beneficiary, also had to sign to agree to the hardship withdrawal negates intervenor's ownership of the 401(k) plan.  Moreover, respondent's Appeals Office conceded that petitioner had satisfied all seven threshold conditions.

Accordingly, we conclude that all the threshold conditions have been satisfied.

Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, sets forth circumstances in which relief will ordinarily be granted under section 6015(f) with respect to an underpayment of a properly reported liability. The parties agree that petitioner does not satisfy the requirements of Rev. Proc. 2003-61, sec. 4.02, because she will not suffer economic hardship if she is not granted relief.

Where, as here, a taxpayer fails to qualify under Rev. Proc. 2003-61, sec. 4.02, relief may be granted under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298. Rev. Proc. 2003-61, sec. 4.03, provides a nonexhaustive list of factors to consider when determining whether to grant equitable relief under section 6015(f). Those factors are: (1) Marital status; (2) economic hardship; (3) whether the spouse seeking relief knew or had reason to know that the other spouse would not pay the income tax liability; (4) the other spouse's legal obligation to pay the tax liability; (5) whether the spouse seeking relief obtained a significant benefit from the nonpayment of the tax liability; and (6) whether the spouse seeking relief complied with Federal income tax laws. We address below the application of the foregoing factors to the facts and circumstances of the instant case.

The parties agree that the first factor, marital status, weighs in favor of granting relief because petitioner is now divorced.

The parties stipulated that petitioner is not suffering economic hardship. Accordingly, the second factor weighs against granting relief.

With regard to the third factor, the parties disagree about whether petitioner knew or had reason to know intervenor would not pay the tax liability. Petitioner never testified that she believed intervenor would pay the tax liability. She and intervenor had discussed their tax obligation before filing their tax return; and intervenor had agreed to assume responsibility for the debt, which he did assume as part of their marital settlement agreement. Petitioner did not give a direct answer to her attorney's question about whether petitioner believed the tax obligation would be paid. Rather, she responded: "I believed that that legal document was all I needed to not be held responsible for it." We construe "that legal document" to mean the marital settlement agreement. The fact that the couple had agreed that intervenor would assume responsibility for their 2007 tax liability as part of the marital settlement agreement suggests that petitioner was aware that the tax liability would not be paid when the couple filed their tax return. Moreover, petitioner bears the burden of proving that she is eligible for

relief, and she failed to testify or present other evidence that she did not know or have reason to know that intervenor would not pay the couple's tax liability. Accordingly, we conclude that petitioner knew or had reason to know that intervenor would not pay the couple's tax liability at the time he filed their tax return. The third factor therefore weighs against granting relief.

As to the fourth factor, intervenor has an obligation to pay the couple's tax liability under the terms of the marital settlement agreement. At the time the couple entered into the marital settlement agreement, petitioner had no reason to believe that intervenor would not fulfill his obligation to pay the tax liability. Intervenor has two jobs and an income that would enable him to pay the tax liability without much difficulty. Indeed, intervenor has entered into an installment agreement with the IRS, and he is currently paying off the couple's tax liability under the terms of that agreement. Accordingly, the fourth factor weighs in favor of granting relief.

With regard to the fifth factor, the parties agree that petitioner did not receive a significant benefit beyond normal support from the unpaid income tax liability. Accordingly, the fifth factor weighs in favor of granting relief.

Petitioner is in compliance with income tax laws. Accordingly, the sixth factor weighs in favor of relief.

Petitioner contends that an additional factor, abuse, also weighs in favor of granting relief.  Both petitioner and intervenor testified that intervenor was never physically abusive during their marriage.[3]  However, petitioner contends that intervenor's angry outbursts during their marriage, which included cursing, show that there was a history of abuse in the marriage.  We disagree.  Although it is clear that the couple had a bad marriage, the couple's frequent arguments do not rise to the level of abuse.

In conclusion, four of the six factors weigh in favor of granting relief and two weigh against.

Petitioner and intervenor have agreed that intervenor is liable for the remaining portion of the couple's 2007 tax liability, and intervenor is currently paying off that liability under the terms of an installment agreement with the IRS.  At trial intervenor made it clear that he objected to granting petitioner relief from joint and several liability because he had already compensated petitioner for the portion of her 2008 tax refund that the IRS offset against the couple's 2007 joint tax liability.  Intervenor is apparently concerned that granting

---

[3]In her brief, petitioner contends that intervenor once "choked" her.  However, this characterization is inconsistent with petitioner's testimony.  During her testimony petitioner was careful to say that intervenor only put his hand on her throat.  During cross-examination she denied that she had testified that intervenor choked her.

relief to petitioner will obligate him to pay the IRS that amount. However, petitioner has not contended that she is entitled to a refund of the offset, and granting relief to petitioner for the unpaid portion of the couple's liability will not obligate intervenor to pay that offset amount. Rather, granting petitioner relief will only affirm what intervenor has already agreed to under the terms of the marital settlement agreement.

Considering all of the facts and circumstances of the case, including the six factors listed in Rev. Proc. 2003-61, sec. 4.03, we conclude that it would be inequitable to hold petitioner jointly and severally liable for the unpaid portion of the couple's tax liability. Accordingly, we hold that petitioner is entitled to relief under section 6015(f) for the unpaid portion of the couple's 2007 tax liability.

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

for petitioner.